SAMUEL COLLINS, Appellant, v. BURLINGTON, CEDAR
RAPIDS & NORTHERN RAILWAY COMPANY
Appellee.

1   Railroads: CUSTOM: PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE.
The plaintiff as custodian of the defendant's oil house had to place the
switch lights on the stands every evening, and collect them for
cleaning and filling every morning. While engaged in collecting
the lamps one morning, and while walking between two of the defend-
ant's tracks, the plaintiff saw a mail and express car pushed by a
switch engine coming toward him on the main track, and stepped
onto a sidetrack and turned, with his back to the approaching car,
to give warning to one S. that a man with a team was on the cross-
ing. Before he had turned facing the car again the car had been
"kicked" by the engine onto the sidetrack, and the same struck the
plaintiff while in the act of taking a lamp from the switch stand,
and injured him. The evidence showed that the car in question was
regularly taken from the sidetrack every morning, and pushed back
to a train on the main track, and that the car had never been known
to be pushed back onto the sidetrack after it had been pulled out.
*Held*, that the plaintiff was guilty of contributory negligence, and was
not, therefore, entitled to recover damages of the defendant for the
injuries sustained.

2.   ——: ——: ——: JUSTIFICATION,   One who turns his back to
a moving train, while standing on a railway track, merely to satisfy
his curiosity, will not be justified in relying upon a custom as to the
movement of trains, which if observed, would have rendered his action
safe.

3.   Practice: DIRECTION TO JURY AS TO VERDICT.   The facts upon which
the finding that the plaintiff was guilty of contributory negligence
being undisputed, *held*, that the trial court rightly refused to submit
the question to the jury.   [BECK, C. J. *dissenting*.]

*Appeal from Emmet District Court.*—HON. GEORGE H.
CARR, Judge.

FRIDAY, OCTOBER 9, 1891.

ACTION to recover for personal injuries.   The case
was tried to a jury, and at the conclusion of the testi-
mony for the plaintiff defendant moved for a verdict
on the following grounds: *First.* For that by plain-
tiff's own showing he is guilty of such contributory

negligence as to preclude his right of recovery in walking on the track, and not observing the approach of the car that struck him, and he has not shown any negligence against the company. *Second.* The evidence shows that the duties of the plaintiff did not require him to engage in the dangers of operating a railroad, but that he was employed solely to work at the oil house, and perform other duties that did not require him to ride on the cars or to work about moving trains or cars operating the road; and plaintiff is, therefore, not within section 1307 of the Code of Iowa." This motion was sustained, and a verdict directed and returned for the defendant. The plaintiff's motion in arrest of judgment and for new trial being overruled, judgment was entered against him on the verdict. The plaintiff appeals. The errors assigned and argued are as to the ruling of the court in sustaining the defendant's motion for verdict.—*Affirmed.*

*J. G. Myerly*, for appellant.

*S. K. Tracy* and *F. E. Allen*, for appellee.

GIVEN, J.—I.  Following the order of the motion, we first inquire whether the plaintiff was guilty of such contributory negligence as to preclude him from recovering. The rule is undisputed that, if he was guilty of negligence directly contributing to cause the injuries complained of, he cannot recover, even though the defendant was negligent as charged. In pursuing this inquiry, we must not confound the testimony tending to show negligence on the part of the defendant with that relating to negligence or care on the part of the plaintiff. The testimony, so far as it relates to the question of negligence on the part of the plaintiff, is in substance as follows: At the time of the accident, March 30, 1889, the plaintiff was aged forty-four years,

1. RAILROADS: custom: personal injury: contributory negligence.

able-bodied, good hearing and sight, and with four
years' experience as an employe of the defendant at its
station at Estherville, as fireman on the switch engine
for several months and the remainder of the four years
as custodian of the oil house and supplies. He was
familiar with the locality of the accident and the move-
ment of trains thereat. At the time of the accident
he was in charge of the oil house and supplies, his
duties being to take charge of the house and supplies,
to place the switch lights on the stands every evening,
and to collect them for cleaning and filling at the
oil house every morning. Estherville was a division
station on the road, the general direction of which
at that point is north and south. Three tracks passed
the depot building, one on the south being known as
the "passing track," the one on the north as the "city
track," the main line being between, and with which
both sidetracks connected north of the depot build-
ing. The switch stand to the passing track was on the
west side of the track, and further north were other
sidetracks, the oil house and the roundhouse. It was
usual to change locomotives, and to add a combination
mail and express car to the train arriving from the south
about seven A. M. each day, for the purpose of the run
further north. The combination car, on returning
from the north, was left standing on some one of the
several sidetracks, and in the morning, before the arri-
val of the train from the south, was set in upon the
passing track. This car was usually put into the train
by the south-end engine drawing it north from the pass-
ing track onto the main line, and pushing or "kicking"
it back to the train on the main line, with a brakeman
on board to control its movements. Several witnesses
familiar with the way this car was put into the train
testified that they never saw it done differently, and
that they never knew it to be pushed back onto the
passing track after it had been pulled out.

On the morning of the accident there was a box car in the train which necessitated some additional movements in disposing of it, and getting the combination car in place in the train.  It appears that after the combination car had been pulled onto the main line it was pushed or kicked back in onto the passing track, instead of along the main line, as was usually done. This movement was necessary for the purpose of disposing of the box car, and getting the combination car in place.  While this switching was being done, the plaintiff started from the depot building north, between the passing track and the main line, towards the switch stand west of the passing track, for the purpose of getting the lamps.  He testifies as follows: "When I got about half way between the clearing post and switch stand I saw the mail and express car and engine coming along at a good jog up the main track back up to me.  It came into my head that there was a team crossing the track at the depot.  I turned, and saw there was, and stepped over or just back, and stopped on the track switch, and called Mr. Sargent's attention that there was a team on the track; that the car was coming up there,  The team was standing on the main line.  As soon as I saw Mr. Sargent turn round, I turned to get the switch light as the car struck me.  I did not get turned around.  I was kind of turned around when the car struck me.  * * *  When I saw this car and engine they were on this street crossing, moving down on the main line towards the depot.  Did not notice how fast they were going.  Did not stop to look whether it was on the main line or passing track. I took it for granted it would go down the main line. Don't know anything about the advice the boys were giving Pingry about driving his team.  That was not what made me turn around.  The reason I turned around was, when I saw the car coming on the main line, I supposed it was coming down the main line,

and knew this team was in on the track, and I turned around to see if it was there. It was on the track when I turned around. * * * From my own knowledge, could not say there was no brakeman on the car, but I saw none on the car." As to these statements, there is no conflict, and we are to determine therefrom whether they showed such negligence on the part of the plaintiff as entitled the defendant to a verdict.

It will be seen that the plaintiff went· upon the track when he knew it was dangerous for him to do so because of the switching, and that he might have avoided that danger by going at a different time. Being on the track, he saw the car, without a brakeman on the front end, approaching him within one hundred feet, "at a good jog, twice as fast as usual." He, without looking to see upon which track, when a single glance would have revealed the fact, stepped upon the passing track, and was injured. Surely, such actions, unexplained, cannot be considered other than the grossest negligence.

Two facts are argued in explanation, either of which it is claimed show that he was not negligent, to-wit, the custom of moving the car on the main line, and that the plaintiff in the line of duty had turned to. warn the man with a team on the crossing. There was no inflexible rule that prevented the defendant from moving its car back upon the passing track, if, as in this instance, its business required it. It was the custom for the defendant's train to go west at seven A. M., but ·it would be no excuse to one who saw it coming that he turned his back, and did not get off the track, because the train was behind time, and not passing as was customary. If we may call the practice of moving the car a custom, still it was a custom that was liable to be varied, and the plaintiff must have known that the car might rightfully be moved back onto the pass-

ing track, and in the absence of other excuse he must
be held negligent in not looking to see upon which track
it was approaching.  If he was rightfully and necessa-
rily upon the track, and the circumstances were such
as to prevent him from seeing or knowing upon which
track the car was coming, then he might rightfully act
upon the custom, but as it was a custom liable to be
varied, and as by looking he could know whether it
was being varied or not, it was his duty, under these
circumstances, to look and know, unless there was
some other reason to excuse him from looking than
the custom.  "He must not go blindly and heedlessly to
his work when there is danger."  *Magee v. Chicago & N.
W. Ry. Co.*, 82 Iowa, 249, and authorities cited therein.

II.  The other contention is that the plaintiff was
justified in taking it for granted that the car would
be moved down the main line, and in not
looking, because of his having turned his
back to the car to give warning to a man with a team
on the crossing of the main track.  *Greenleaf v. St. L.,
K. & N. W. Ry. Co,.* 33 Iowa, 53, and *Baldwin v. D. &
S. C. Ry. Co.*, 63 Iowa, 210, are cited.  In the former
case, the plaintiff stood on a moving car with his back
to the water-spout, against which he was carried, and
by which he was struck, "watching for a signal from
the conductor to be communicated to the engineer."
In the other, the plaintiff was injured by the falling of
a pile of lumber because of the negligent manner in
which it had been piled.  It was held that he was under
no duty to examine the manner in which it was piled,
and had a right to assume that it was carefully piled.

The only testimony upon this subject is that of the
plaintiff himself, which we have already quoted.  It
does not appear that he gave, or attempted to give,
any warning to the man in charge of the team.  He
·says:  "It came into my head that there was a team
across the track at the depot, and I turned and saw

there was, and stepped over or just back, and stepped onto the passing track switch, and called Mr. Sargent's attention that there was a team on the track; that the car was coming up there. The team was standing on the main line. As soon as I saw Mr. Sargent turn around, I turned to get the switch light as the car struck me." His only other statement on this subject is: "Don't know anything about the advice the boys were giving Pingry about driving his team. That was not what made me turn around. The reason I turned around was when I saw this car coming on the main line I supposed it was coming down on the main line, and knew this team was on the track, and I turned around to see if it was there. It was on the track when I turned around. It was about two hundred and fifty to three hundred feet from the depot where I turned around." It is stated elsewhere that the team was on the crossing near the depot.

It seems evident from these statements that the plaintiff's movements were influenced entirely by the belief that the car would move down the main line. He did not even attempt to give any warning to the man on the crossing, and we may say, from the distance that he was from the crossing, probably could not do so. He does not say that he turned around to give warning, but "turned around to see if it was there." The conduct of the plaintiff, as shown in this testimony, furnishes another of the many instances in which men engaged in dangerous employments become negligent as to the dangers about them. No ordinarily prudent, cautious man, alive to the dangers of the situation, would have gone upon those tracks at the time the plaintiff did, or, if upon them, would have yielded to idle curiosity, and failed to have avoided the dangers which overtook him and caused his injury. No reason, whatever, is offered for his going upon the track when he did. It was a time of danger, and his

duty did not require that he should go upon the track
at that very time.  He could have gone for the lamp
after the few minutes required for the switching as well
as when he did.  There is no reason offered why he
was not negligent in going upon the track at that time,
and for this reason alone, if not for the others named,
the defendant's motion for verdict was properly sus-
tained.

III.   The appellant contends that the question of
contributory negligence should have been submitted to
the jury, and cites *Milne v. Walker*, 59
Iowa, 186.  We think this case is within
the rule there announced.  The facts, as
we have stated them, are undisputed.  There is no
conflict as to the time or manner in which the plaintiff
went upon the tracks, and was injured.  "We think
the undisputed facts in this case show, as a matter of
law, that the plaintiff is not entitled to recover."  It
follows from this conclusion that there was no error in
sustaining the motion for verdict.  As this fully dis-
poses of the case, we need not consider the other ques-
tions discussed, further than to say that the testimony
excluded upon defendant's objection did not relate to
the question of plaintiff's negligence.

The judgment of the district court is AFFIRMED.

BECK, C. J. (*dissenting*).—I.   The evidence shows
that the duties of the plaintiff required him to go upon
the railroad tracks at the locality where the accident
occurred, and that at the time he was injured he was
upon the tracks in the discharge of his duty.  It is also
shown, without conflict in the evidence, that by the
uniform and unvaried custom and course of business
of the defendant's employes in attaching the combina-
tion car to the train it was never moved upon the
"passing track," but always, upon the arrival of the

*Margin note:* 3. PRACTICE: direction to jury as to verdict.

train to which it was to be attached, it was taken from the "passing track," where it had been left, to the main line and "shoved" or "kicked" on that line to the train. The plaintiff and three or four other witnesses all unite in testifying that this was the uniform course of the business, which not one of them had ever seen varied. It is to be inferred that this custom was based upon the necessity of moving the combination car upon the main track in order to attach it to the train which stood upon that track. But, whatever may have been the reason of the custom, it is a custom that was never disregarded, within the knowledge of the witnesses. There is not one word of evidence tending to show any reason or necessity for departing from the custom at the time the plaintiff was injured, or that the plaintiff had any notice or warning of the disregard of the uniform custom, or had any ground or reason to anticipate the use at that time of the passing track for moving thereon the combination car. It is certain that, as a reasonable and prudent man, he was authorized to rely upon this unvaried custom of taking the combination car to the train upon the main track at the time the accident occurred. As we have seen, he was without fault and in the discharge of his duty upon the tracks; and without fault, and with the purpose of protecting the interests of the defendant, he gave warning of the fact that a team was on the track. In doing this, he was compelled to turn towards the person he warned. He stepped upon the "passing track," and was struck by the combination car, which was moved upon that track instead of the main track. The evidence shows that this car was "kicked" upon the "passing track;" that is, it was separated from the engine, and was carried by its own momentum, the engine being stopped. It also clearly shows that no brakeman or other person was on the end of this car which was towards the plaintiff, and the evidence tends

to show that no one was anywhere on the car, which was moved at an unusual rate of speed, some of the witnesses testifying that it moved twice as rapidly as the ordinary speed.

II.   Upon these facts, in addition to those stated in the opinion, I conclude, *first*, that the evidence tends to show that the defendant's employes in charge of the combination car, and the locomotive moving it, were negligent in using the "passing track" on the occasion without warning or signal, contrary to the custom and course of business of the plaintiff and its employes; in running the car at an unusual speed, and without a brakeman or other person upon it to control its movements, and keep a lookout to warn others of danger, on account of the movements of the car; and, *second*, that the plaintiff did not contribute to his injury by his own negligence.

III.   The facts which I have just stated plainly tend to show the defendant's negligence. Its duty required it to use sufficient precautions to guard against accidents which might result from the disregard of its custom in handling the combination car. The evidence tends to show none. But it does tend to show unusual speed of the car without the presence of a brakeman or other person in control of it, or give notice of warning of its approach. There is no evidence of any warning of the approach of the car upon the passing track. Other grounds upon which negligence may be inferred could be mentioned.

IV.   The plaintiff was authorized to presume that the usual custom and course of business in handling the combination car would be followed, and that the employes in charge of the car and locomotive would act in accord with the usual custom, and with proper care to avoid accidents. Resting upon this presumption, he was authorized to believe that the combination car was on the main line, and it was not, therefore,

negligence for him to step upon the "passing track," believing that the approaching car was on the main track. *Pringle v. Chicago, R. I. & P. Ry. Co.*, 64 Iowa, 613; *Crowley v. Burlington, C. R. & N. Ry. Co.*, 65 Iowa, 658; *Steele v. Central Ry. Co.*, 43 Iowa, 109; *Beems v. Chicago, R. I. & P. Ry. Co.*, 58 Iowa, 150.

V.    But it is said that, if he had stopped and looked, he could have seen the switch was so set as to show the approach of the car upon the "passing track." This position may be, for the purpose of the case, admitted. But the defendant believing, as he was authorized to believe, that the combination car was on the main track, his vigilance, caution, and even instincts for self-preservation, were overcome by his belief, which stood in the place of knowledge, and prompted his action. Men of intelligence and ordinary prudence would have acted in this way. He is not, therefore, to be charged with the effects of negligence.

VI.    Besides, men required to act with promptness are not negligent because they do not stop and hesitate, and consider whether the knowledge and beliefs they possess and entertain are correct, and thus delay action until probably the time is passed in which they may be able to act. In the running and management of trains, promptness and decision are demanded. Therefore, employes must be permitted to act upon the belief and presumption that all customs and rules usually followed in all like cases are observed and obeyed in the matters wherein they are called upon to act. I reach the conclusion that the defendant was negligent, and that the plaintiff did not contribute to his injury by his own negligence.

Therefore, in my opinion, the judgment of the district court ought to be reversed.