A. J. HIRSCHL, Administrator, Appellant, v. J. I. CASE THRESHING MACHINE CO., Appellee.

1. **Negligence:** PERSONAL INJURY: EVIDENCE: DIRECTING VERDICT. In the course of the removal of a threshing machine to the point of delivery under the supervision of the defendant's agent, the plaintiff's intestate was introduced by the purchaser to the agent as an engineer who had been employed to run the engine. While the machine was being moved the intestate took charge of the guide-wheel, and it was the business of the man in such position to know the condition of the road ahead, and guide the machine. The agent during such time was attending to the engine, and from his position could not see the road ahead. While thus situated, the machine was run upon a bridge, which broke down, and the intestate was killed by being crushed between the guide-wheel and the tender. *Held,* in an action against the machine company to recover damages to the estate of the deceased, that the court properly directed the jury at the close of the plaintiff's evidence, to return a verdict for the defendant.

2. ――――: ――――: ――――: REVIEW. The trial court having excluded proof of conversations had with the defendant's agent the day after the accident, *held*, that the correctness. of the ruling could not be determined in the absence of any indication of what it was intended to prove thereby.

*Appeal from Cedar District Court.*—HON. J. H. PRESTON, Judge.

MONDAY, MAY 23, 1892.

THE plaintiff brought this action as administrator of the estate of Daniel Maurer, deceased. Maurer was killed while employed in assisting in operating a traction steam engine, which was the motive power for a threshing machine. It is charged in the petition that the casualty occurred by reason of the negligence of one Wilson, who was then acting for the defendant in operating, or running said engine. A jury was impaneled to try the cause, and at the close of the introduction of the plaintiff's evidence, on motion of the defendant, the court directed the jury to return a verdict for the defendant, which was done. The plaintiff appeals from a judgment rendered on the verdict.—*Affirmed.*

*Heinz & Hirschl* and *Wolf & Hanley*, for appellant.

*Craig, McCrary & Craig, Wheeler & Moffit,* and *N. M. Hubbard,* for appellee.

ROTHROCK, J.—I. The main question involved in the appeal is: Did the court err in directing a verdict on the ground that the evidence was insufficient to authorize the jury to return a verdict for the plaintiff? A determination of this question requires an examination of the evidence which the plaintiff introduced to sustain his cause of action. It appears from the evidence that the partnership of Kinnan & Fevis purchased a steam

1. NEGLIGENCE: personal injury: evidence: directing verdict.

threshing machine of the defendant.   The contract of purchase was made with one Julius Freund, who was the defendant's agent at the village of Lowden, in Cedar county.   Oliver Kinnan, one of the purchasers' of the machine, went to Lowden and settled for the machine before it was removed from that place.   When the order for the machine was given, it was arranged that the defendant was to send a man to Lowden to run the machine out to Kinnan's place, and to stay three or four days and show how to run it.   A man named Wilson came to Lowden for that purpose, and Kinnan met him there.   The engine and machine were started on the road to Kinnan's place.   The distance was from six to seven miles.   Wilson took charge of the running of the engine, and proceeded on the way, about three and one-half miles, and it being in the evening, it was stopped because of the approach of night.   This was on Saturday.   As we understand the evidence, the machine was left there until Sunday afternoon, when it was again moved on toward Kinnan's place.   Kinnan had hired Maurer to run the engine for him in threshing, and he met with Wilson, Kinnan and others to move it on to Kinnan's place.   Maurer had experience as an engineer of stationary engines, but had not been employed in running a traction engine.   When these persons met, Maurer was introduced to Wilson, and the machine was started on its way; and while on the road it was run upon a bridge, which broke down, and Maurer was killed by being crushed between the guide wheel and the tender.

Kinnan was examined as a witness for the plaintiff, and testified in part as follows:   "I introduced Maurer to Wilson as being the engineer I had employed to run the machine, and Wilson went on and explained to him the use of the engine, the use of the machine, the governor, the throttle and the guide wheel.   I think he went all over the machine.   Am not positive about his

directing him how to oil it. I didn't pay much attention to what he was doing. He showed him about the machine, but what it was I couldn't say now. We had not commenced firing up before Wilson got there. When we left there Maurer was running the engine. He took it in charge there to run it, and run it all the way until it went into the bridge. So far as I saw, I saw they were looking out, and Wilson was attending to the firing, and Maurer was standing at the guide wheel. It is the business of the man at the guide wheel to know the condition of the road ahead, and to run and guide the machine and stop and start it. A man of Wilson's height when standing on the footboard and firing, cannot see the road ahead." He further testified as follows: "I am familiar with the engine and the running of it now. I and Mr. Haney run it. Standing where Wilson was putting in fire he cannot see the road. He would have to get to the place where the engineer is standing at the guide wheel." There is other evidence to the effect that Wilson was running the engine, but, when explained by the witnesses, it does not conflict with the testimony of Kinnan that Wilson could not see the road from his position on the engine. All of the evidence shows that Maurer was at the guide wheel from the time the engine started until the wreck occurred, and that, if anyone could see that a bridge was to be crossed, it was Maurer. No jury would be warranted in finding that Wilson could have seen the bridge from his position on the engine. This being the state of the record, it is manifest that the court rightly directed a verdict for the defendant. Counsel for the plaintiff contends that there is some evidence that Wilson knew that a bridge was to be crossed, because he had passed over the road on the same day and the day before; and that the shades of night were coming on when the wreck occurred, and Maurer could not see the bridge ahead of the engine.

The evidence does not show that it was so dark that the bridge could not have been seen by Maurer in time to have stopped the engine. And there is nothing in the case to show that Maurer was not familiar with the road. Complaint is made because the plaintiff was not permitted to introduce expert evidence as to the number of men necessary to run the engine. Such evidence would not have raised a conflict with the fact that stands out all through the case, that Maurer was giving direction to the engine, and was at the point of lookout for obstructions in the road.

II. The plaintiff sought to introduce as evidence conversations with Wilson the day after the accident, 2. —:—:—. and the court sustained objections thereto. review. Whether such evidence was competent to bind the defendant we need not determine. It is not shown what the plaintiff sought to prove by the conversations, and, without some showing as to what was sought to be proved, we cannot determine that the rulings were erroneous. The whole record shows that if the court had submitted the cause to the jury, and a verdict had been returned for the plaintiff, it would have been the duty of the court to promptly set it aside as being without the support of evidence. AFFIRMED.