C. R. BARNHART v. THE CHICAGO, MILWAUKUE & ST. PAUL RAILWAY COMPANY, Appellant.

**Railroads: NEGLIGENCE: EVIDENCE.** After horses had entered upon a railroad company's inclosed right of way, without fault of the company, a brakeman was sent ahead to assist the keeper in removing them. The train was slowly moved forward, with all possible caution, and came to a stop a quarter of a mile from the horses, which broke past the keeper and brakeman, and ran into a bridge. *Held,* that the moving of the train was not negligence.

**JURY QUESTION WHEN.** While the question of negligence is usually one of fact, it is a question of law for the court where, from the undisputed evidence in the case, but one conclusion can reasonably be drawn.

*Same.* The fact that a horse passed over, or jumped a railroad cattle guard, does not of itself establish the fact that the cattle guard was insufficient or improperly constructed.

*Appeal from Marshall District Court.* — HON. S. M. WEAVER, Judge.

SATURDAY, APRIL 11, 1896.

ACTION for damages to a horse. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals. —*Reversed.*

*Dyer & Stevens* and *Binford & Snelling* for appellant.

*Brown & Hurd* for appellee.

KINNE, J.—I.   Plaintiff seeks to recover damages for the value of a horse, which he claims was so badly injured, by reason of defendant's negligence, as to be rendered useless.   The negligence charged is:   *First*, in maintaining an insufficient cattle guard, over which said horse, which had escaped from an inclosure, passed upon the defendant's right of way, and was injured; *second*, that the employes of the defendant, in charge of its engine and train, and knowing that said horse had passed over said guard onto defendant's track and right of way, which was inclosed by a fence, and also knowing that there was a bridge over a stream, about eighty rods east of said guard, "wrongfully, willfully, and maliciously started said train across the cattle guards, and ran the train east, frightening said horses so that they ran past the parties in pursuit, and drove them upon said bridge, where plaintiff's horse, being unable to escape, was driven into it, and crippled, so that it became absolutely worthless, by the gross, willful, and reckless negligence of the defendant."   Defendant denied all of the allegations of the petition, and avers that the injury was caused by the plaintiff's own negligence.   At the close of the plaintiff's testimony, the defendant moved for a verdict, which motion was overruled, and defendant excepted.

II.   The first question for our consideration is, did the court err in refusing to direct a verdict for the defendant?   Ordinarily, the question of negligence is one for the jury, though there are cases where it is a question of law for the determination of the court.   The rule in this state is, if, from

the undisputed facts, but one conclusion can be reasonably drawn, then the question is one of law; but if, under the facts, different minds might reasonably reach different conclusions, it is a question of fact for the jury. *Milne v. Walker*, 59 Iowa, 186 (13 N. W. Rep. 101); *Whitsett v. Railway Co.*, 67 Iowa, 150 (25 N. W. Rep. 104); *Matthews v. City of Cedar Rapids*, 80 Iowa, 463 (45 N. W. Rep. 894); *Collins v. Railway Co.*, 83 Iowa, 346 (49 N. W. Rep. 848); *King v. Bird*, 85 Iowa, 535 (52 N. W. Rep. 494). So it is now the rule that a motion to direct a verdict should be sustained when, considering all of the evidence, it clearly appears to the trial judge that it would be his duty to set aside a verdict, if found in favor of the party upon whom the burden of proof rests. *Meyer v. Houck*, 85 Iowa, 319 (52 N. W. Rep. 235); *Reeder v. Dupuy*, 96 Iowa 729 (65 N. W. Rep. 338). At the close of plaintiff's case, the following facts had been established by his witnesses, and there was no conflict in relation thereto. The horse escaped from plaintiff's inclosure, and ran along the highway until it came to the railway crossing. When it reached that point, it turned east, and ran or jumped over the cattle guard into the defendant's inclosed right of way. The cattle guard was described to the jury, and a plat of it shown some of the witnesses, but it does not appear from the evidence introduced by plaintiff, that this plat was introduced in evidence, or seen by the jury. The guard was constructed like all other guards on defendant's road. No evidence had yet been introduced showing it in any respect insufficient. Indeed, the evidence tended to show it to have been sufficient, as all the evidence touching the matter was to the effect that animals had never before been seen to go over these guards. So far as we can see, when plaintiff rested, there was no evidence whatever which tended to show that this guard was insufficient,

either in construction or repair, unless the fact that the horse passed over it, is to be deemed evidence of insufficiency. It is clear that the fact that the horse passed over, or jumped over the guard, is not of itself evidence of its improper construction or insufficiency. *Timins v. Railway Co.*, 72 Iowa, 94 (33 N. W. Rep. 379). We do not think this case comes within the rule of the case just cited. In the case at bar there was no evidence as to depth of the pit under the timbers, no evidence that any other sort of a cattle guard was ever used, no evidence that the guard used was not in fact as perfect in design and construction, for the purpose of turning stock, as any other that had been or could be devised, no showing that for the purpose it was designed it was in any way defective or insufficient. Under such circumstances, it seems to us, a jury would not have been warranted in saying that the guard was insufficient, and that, if a verdict was found, based upon such a claim, it would be the clear duty of the court to set it aside.

III. It is claimed that the motion to direct a verdict could not be sustained, because of negligence of defendant in running its train towards the horse when it was between the train and the bridge, thereby, as it is claimed, frightening the horse, and causing it to run upon the bridge and be injured. Much is said in argument by appellee about the defendant having run its train upon the horse, or driven the horse to death by its train. This is not a case, under the facts, like those cited. The horse was not run upon, or driven to death, as claimed by appellee. Plaintiff's witness who was in charge of the animal, testified, in substance, that after the horses (there were several of them) had jumped the cattle guard, and ran towards the bridge, he told the trainmen to stop, and give him fifteen minutes; and he would scare the horses back; that he got around the horses, and

drove them part way back, when they got scared at
the train, which was a quarter of a mile or more away,
and they ran onto the bridge, when plaintiff's horse
broke his leg.  After the witness went to drive the
horses back, the train slowly pulled east from the
crossing towards the bridge; that when it had reached
a point about half way from the crossing to the bridge,
it stopped, and stood still, until after the horse was
injured. A brakeman got off, and assisted all he could in
driving the horses back. The train was over a quarter of a
mile from the horses when it stopped.   When the train
moved, it made no noise, did not whistle, but one
witness says that "steam will escape from an engine,
you know."  Do these facts show negligence in the
operation of the train, or in moving it at all, while
the attempt was being made to get the horse out of the
right of way?   As the train was moved slowly without
making noise, and as a brakeman had gone ahead to
help the man who was after the horses, it would seem
that every precaution possible was used by defend-
ant's employes, if the train was to be moved at all.
Was it negligence for defendant's employes to attempt
to, or in fact, move the train.   To so hold, is to say that
trains which, in the successful operation of a railroad,
must meet and pass other trains at fixed times, should
wait an indefinite time for owners of animals to get
them out of the right of way before such trains can
proceed, and that in cases where said animals are upon
the right of way without fault of the railroad com-
pany, where they are tresspassers upon the right
of way.   Must the operation of the defendant's road
cease at that place pending the attempt to remove
these horses from its right of way?  Such seems
to be appellee's claim, but it seems to us unrea-
sonable.  When the train was moved, as is shown,
with all possible caution, and stopped as the horses
approached, a brakeman was sent to aid in driving

the horses, but they wheeled, and ran past their keeper and the brakeman, into the bridge; and it seems to us it must be said that it was a casualty for which no one was in fault; that, under the circumstances, it was unavoidable. This view is based upon the thought that under the circumstances, no duty devolved upon the trainmen to keep the train standing, waiting, during the entire time this attempt was made to get the horses out. It then becomes a question whether, under all of the circumstances, the train was moved in a negligent manner, so as to frighten the horse. As we have indicated, the evidence undisputed, shows that the utmost care was used by the defendant's employes in moving the train. Such being the facts, it seems to us a verdict, if rendered for plaintiff, should have been set aside by the trial court; therefore, it follows that the motion to direct a verdict for the defendant should have been sustained.

IV.  The conclusion we have reached renders it unnecessary that we consider other errors discussed. —REVERSED.