C. J. JOHNSON, Appellant, v. W. V. DOUBRAVSKY, Appellee.

**BROKERS:** Commission—Procuring Cause of Sale—Conclusion of
1 Witness. The conclusion of a witness that he did not purchase certain property by reason of anything said or done by a broker is not controlling on the question of the efficient cause of the sale if the facts and circumstances relating to what the broker did say and did do fairly justify a different conclusion.

**BROKERS:** Commission—Attempt by Broker to Prevent Sale—
2 Failure of Proof—Directed Verdict. A broker who is content to show the reasonable value of services in *fully* effecting a sale may not recover when the record reveals the fact that the broker carried his services to the point of bringing the seller and purchaser together; that thereupon dispute arose between the seller and the broker as to the commission to be paid in case of a sale, and that the broker then made no further effort to effect the sale, but actively attempted to prevent it. This is true because, conceding, *arguendo,* that he might recover the value of his services up to the point of time when he sought to defeat the sale, the record was barren of evidence of *such* value.

**EVIDENCE:** Opinion Evidence—Value—Improper Inclusion of
3 Facts. An opinion as to the total unitemized value of several items of services is wholly nullified when it appears that some of the items included in the estimate are material but wholly unallowable.

*Appeal from Linn District Court.*—W. N. TREICHLER, Judge.

WEDNESDAY, JUNE 20, 1917.

REHEARING DENIED, SATURDAY, SEPTEMBER 29, 1917.

ACTION at law in which plaintiff seeks to recover a commission alleged to be due for finding a buyer for land of defendant. A verdict was directed against plaintiff and he appeals.—*Affirmed.*

*L. M. Kratz,* for appellant.

*J. C. Leonard* and *O. N. Elliott,* for appellee.

SALINGER, J.—I. The petition alleges that, on or about September 26, 1911, plaintiff entered into oral contract wherein it was agreed plaintiff should undertake to find a purchaser for a certain 12-acre tract of land belonging to defendant, and located near Cedar Rapids; that, if he found one, defendant would pay a commission; that thereupon plaintiff saw one Leibold, went to said tract with him, showed all of it to him, told him the price asked by defendant, undertook to close the sale with him and made further appointments with him in continuance of these negotiations; that Leibold went direct to defendant and they effected a sale and purchase to Leibold for $4,150; that the reasonable commission for the services rendered by plaintiff is $128.75, and it has not been paid.

The answer denies all not admitted; admits Leibold went to defendant and that he sold the tract to him for $4,150; avers the sale was made without assistance from plaintiff, and that plaintiff tried to prevent the sale by word and act, has thereby waived any right to commission, and is barred and estopped to claim one.

In the sustained motion to direct verdict, defendant asserted and he now asserts that the following matters are established by the evidence introduced by plaintiff:

(a) There was no contract between the parties wherein plaintiff was employed by defendant to sell the property in question.

(b) Plaintiff was not the procuring cause of the sale, and the purchaser was procured and the sale made wholly by and through the efforts of defendant.

(c) If a contract was made it was to sell at a price fixed therein, and plaintiff had no buyer who was ready, willing and able to pay that price.

(d) Plaintiff, instead of furthering the sale, tried to prevent it.

(e) He was not the agent of defendant, but of Leibold, who bought of plaintiff, and so acted in the interest of the buyer as that he may not have a commission from defendant, because of bad faith.

(f) If there was ever a contract, plaintiff revoked it and rescinded same three or four days before any sale was consummated; and that no contract existed at the time defendant made sale. Further, it was and is claimed that there is no competent evidence to show what the claimed services are reasonably worth, and hence nothing upon which a recovery of plaintiff could be based.

It appears in evidence that plaintiff saw an advertisement of defendant offering certain property of the defendant for sale and asking intending purchasers to call at the office of the Star Printing Company; that thereupon plaintiff called on defendant and asked him the price of the advertised tract; that the upshot of the talk was defendant advised plaintiff that a Mr. Russell might examine the property at any time and that plaintiff should bring on a buyer whom plaintiff claimed he might induce to buy, and as quick as he could; that plaintiff answered he would get word to this buyer as quick as he could; that thereupon plaintiff went to look at the property and then induced one Leibold, who finally bought, to come and have dinner with plaintiff, and arranged with him that after dinner he would take Leibold out to see the property of defendant; that after dinner he showed him some lands for sale, but Leibold

declined to purchase; that thereupon plaintiff showed Leibold the land owned by defendant. It seems that while the defendant's tract was being inspected Leibold saw a sign, tacked to a telephone pole, which made the same offer found in the advertisement of the defendant which originally led defendant to see plaintiff, and Leibold remarked to the plaintiff that this was the piece which had been in the morning paper. Leibold was well satisfied with the land owned by defendant except as to price, which he thought "was a little steep," and plaintiff said to him not to be discouraged at the price; that, when they went to the owner and talked to him, he would make the price right to Leibold. Leibold and the plaintiff then made an appointment to meet in the Globe Hotel the next morning and go from there. It seems Leibold, too, had seen said advertisement in a newspaper, and before this arranged-for meeting took place, he went to the office of the Star Printing Company to see the owner, but the office was closed, and he saw no one. But it seems he saw this newspaper when the parties met in the hotel. When plaintiff and Leibold met at the hotel Leibold informed plaintiff that he had seen the owner and had asked him about the price, had told the owner he had seen the place, had not told him defendant had taken him there; and that he had told the owner if he would sell for $4,000, he, Leibold, might talk about it. The price stated in the advertisement was $4,500, but the owner told Leibold he would take $4,200 if Leibold took the property quick. After this, Leibold told the owner that Leibold had a friend whom he had agreed to meet, and thereupon he went to see the plaintiff at the hotel in accordance with the appointment made the day before. After the interview at the hotel, Leibold and plaintiff called on defendant, who told the plaintiff that Leibold had been to see plaintiff about that tract of land which had been spoken of between plaintiff and defendant, and the owner answered that Leibold didn't say

anything about that, and that if he had, he would have
asked him more for his land, to which plaintiff responded
that he couldn't help that; that he was his customer; that he
did take him out and had showed him the land. The deal
was not closed until Leibold again looked over the prop-
erty. And Leibold says plaintiff did not inform him he
was agent, nor indicate he had defendant's property for
sale, and that Leibold was under impression he didn't have
it.

It is true Leibold states by way of con-
clusion that he did not enter into the con-
tract which he finally made with the owner
by reason of anything that plaintiff said or
did, but for the purpose of determining
whether there was a jury question on the efficient cause of
the sale, we cannot be bound by such a conclusion if the
facts stated by the witness are such that a jury might rea-
sonably draw the opposite conclusion.

1. BROKERS:
commission:
procuring
cause of sale:
conclusion of
witness.

If there were not a quite general custom to sustain mo-
tions to direct verdict in their entirety, when sustained at
all, we feel sure the trial court would not be before us in
the position of holding a jury might not find from the evi-
dence the plaintiff was employed by defendant to find a pur-
chaser, that he found one, that plaintiff sold to the pur-
chaser found, and that plaintiff is in no position to com-
plain that the sale was not made on the terms that he fixed
when he employed the defendant. We think there was suf-
ficient evidence upon which a jury could find for plaintiff
upon these points, though we are unable to see that *Fenton
v. Miller,* 153 Iowa 747, *Jones v. Ford,* 154 Iowa 549, *Lieu-
wen v. Kline,* 142 Iowa 14, and *Gilbert v. McCullough,* 146
Iowa 333, which appellant cites, afford his claims any aid.
We think, also, that most of the objections made against
this being a jury question are met and the contentions

of the appellee overruled in *Rounds v. Alee,* 116 Iowa 345;
*Kelly v. Stone,* 94 Iowa 316; *Hubachek v. Hazzard,* (Minn.)
86 N. W. 426; *Welch v. Young,* (Iowa) 79 N. W. 59 (not
officially reported); *Blodgett v. Sioux City & St. P. R. Co.,*
63 Iowa 606; *Ryan v. Page,* 134 Iowa 60; *Hurd & Wilkinson
v. Neilson,* 100 Iowa 555; *Moore v. Cresap,* 109 Iowa 749.

We find, too, there was no evidence of a double agency
or of acting in the interest of the buyer in such bad faith
as that plaintiff should be on that account denied a commis-
sion. And beyond all question, too, there was competent
evidence from which a jury could determine what was the
ordinary and usual commission for selling real property
in that vicinity during that time.

2. BROKERS:
commission:
attempt by
broker to pre-
vent sale:
failure of proof:
directed ver-
dict.

II. If a reversal is avoidable, it must
be because the motion was rightly sustained
on other grounds. It is further presented
by the motion to direct verdict that, if there
ever was a contract between the parties,
plaintiff revoked and rescinded it before any sale was con-
summated; further, that there is no competent evidence to
show what "the services which he claims to have performed
were reasonably worth." It will appear presently why
these two grounds may not be treated separately.

It appears that, when the plaintiff and Leibold reached
the defendant, a controversy arose about commissions, and
Leibold said it was usual for the seller to pay, and that what-
ever offer was made must be net to him. Leibold offered
$4,000, and defendant said he couldn't part with the prop-
erty for that. At some stage of the interview, the defend-
ant offered the plaintiff a commission of $25, and suggested
that Leibold should pay $10 of that. It was at this junc-
ture Leibold remarked that he would pay no commissions.
They disagreed about it, and had trouble to such an extent
that Leibold told defendant he believed he would back out,

that if there was going to be trouble between him and the plaintiff, he, Leibold, didn't want to be mixed up in it. The plaintiff testifies that, when Leibold said he would pay no commission and that the man who sold had to pay it, Leibold said to plaintiff, "Come on Johnson, let's go," and that after plaintiff told defendant the latter would have to pay the regular commission, defendant said to Leibold that Leibold could have it for $4,150, and Leibold bought it at that price. There was testimony from which a jury could believe defendant said to plaintiff that, if he was not satisfied with $10, he would cut him off entirely and close the deal himself, and that plaintiff responded, "All right; close the deal; but if you do, I bet you a Stetson hat you are entitled to pay me the regular commission;" and that defendant said to Leibold, when the trouble was on, "You and me have nothing to do with him; if Johnson tries to persuade you not to buy, you have to pay no attention to him;" and that defendant offered Leibold to draw up a contract that would cut Johnson out.

The jury could believe that after the parties seemed unable to agree and plaintiff and Leibold left, the plaintiff told Leibold that they would get out of this deal,—to come with him and he would show him another property; that he tried to persuade Leibold to see other places instead of the one owned by plaintiff and at that time not bought by Leibold; that he said to Leibold he, plaintiff, thought Leibold could do better than buy defendant's place; that he offered to bet a hat with defendant that defendant couldn't sell Leibold the place; that while Leibold will "not make it so strong as to say that at that time he ran down defendant's property to him," he did, on the day after this disagreement, tell Leibold not to buy defendant's place and he, plaintiff, would show Leibold some other place; that, after they left that day plaintiff tried to persuade Leibold not to buy the property, saying he had other

property which he would show Leibold and which was a better bargain; that plaintiff told Leibold not to buy the property, giving as his reason because he could not agree on the commission; that he never again asked Leibold to buy this property and tried to persuade him not to buy it and showed him no property after this, because if Leibold bought at all he would buy that of defendant. The only denial which plaintiff makes is by testifying that he did not tell Leibold he, plaintiff, didn't want Leibold to buy this property. He did testify, also, that he told Leibold to buy it; that, while it might look high the first year, after he was there a year Leibold would find it the best place he ever had, because the land couldn't be beat; that if he bought it at $4,150, he was buying the best piece of land in Linn County, because it was black sandy loam. But, as this was said before the abandonment and disparagement to which Leibold testifies, it, of course, is not in conflict with the testimony of Leibold as to what plaintiff said and did in the way of disparagement and abandonment. True, Leibold says that, after he, Leibold, had bought the place, plaintiff told him he had got a bargain and that it was a good place. But Leibold adds that even then plaintiff sometimes praised it and sometimes talked the other way. This, again, makes no jury question on disparagement and abandonment.

3. EVIDENCE: opinion evidence: value: improper inclusion of facts.

We have no occasion to determine whether the conduct of plaintiff would defeat recovery of a stipulated commission fixed by contract. We need not determine whether he has forfeited recovering the reasonable value of the time he spent and the efforts he made before he said and did what he said and did after there was a disagreement about commissions. The controlling thing for our determination is whether plaintiff has any evidence on which the jury could base an allowance to him for what was done by him in the circumstances disclosed

by the record. He has no testimony as to what is the reasonable value of his services in a case where, between their rendition and the sale concerning which they were rendered, one abandons his efforts and does what he can to prevent a sale, and, notwithstanding, a sale was thereafter made. The only testimony is what was the usual and ordinary commission "charged in Cedar Rapids, Iowa, during the year 1911 and thereabouts." This advised the jury what his services would have been worth if it had been the usual case of being the effective agency through which a purchase was brought about. This does not in the least show what the services of the plaintiff were worth in the peculiar case under consideration. It leaves the matter in the condition of a calculation where one factor in its result is not obtainable. It is the equivalent of testimony that three things together are worth a certain amount where one of the things taken into consideration is either unknown or not to be allowed for, and where there is no testimony what the two remaining, standing alone, would be reasonably worth. In such circumstances the testimony on value is no evidence whatever. See *In re Trusteeship of Clark,* 174 Iowa 449, at 458.

While the court erred in sustaining some of the grounds of the motion to direct, it did not err in directing verdict for defendant. Hence, we must affirm.—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.