E. J. DONAHOE, operating under name of DONAHOE INVESTMENT COMPANY, Appellant, v. M. S. DENMAN, Appellee.

No. 43940.

1274

Cunningham & Scott, for appellant.

Gamble, Read & Howland, for appellee.

Donegan, J.—This case involves the claim of plaintiff against the defendant for a commission for the sale of real estate. At the close of the plaintiff's evidence the defendant moved the court to direct a verdict in his favor, and this motion was overruled. Evidence was thereupon introduced by the defendant and, at the close of all the evidence, the defendant again moved for a directed verdict and this motion was sustained. From this ruling of the court sustaining the defendant's motion for a directed verdict, the plaintiff appealed.

The only ground of error upon which plaintiff seeks a reversal is that, "The court erred in sustaining defendant's motion for a directed verdict and in not submitting the case to the jury, to determine if plaintiff was the efficient and procuring cause of the sale of defendant's property." In order to reach a decision on the question thus submitted, it is necessary to consider the state of the evidence at the time the motion for a directed verdict was made.

In passing upon this motion the trial court had before it evidence introduced by plaintiff showing the following facts: The defendant and his sister owned a house and lot on 37th street in the city of Des Moines, Iowa, which they desired to sell. The plaintiff, E. J. Donahoe, conducted a real estate agency in Des Moines, and called upon the defendant about the first of May,

1935, in regard to selling this property, and was told by the defendant that he could try to procure a purchaser. The plaintiff was directed to ask $25,000 for the property, but it was understood that it might be sold for less. About May 10, 1935, John Donahoe, the son and agent of the plaintiff, called upon the defendant, at his office, discussed the property with him, and obtained his permission to go to the property and examine it. Pursuant to this permission, John Donahoe went through the property, and on May 14, 1935, wrote letters containing a detailed description of the property to four persons, including James H. Windsor, advising them that the plaintiff had the property for sale, that the asking price was $25,000, and that should they be interested the plaintiff would be glad to show the property at their convenience. On the same day a letter was sent to the defendant, advising him that plaintiff had submitted the property to the parties named in the letter above referred to. About the first of July, 1935, John Donahoe called on James H. Windsor at his office for the purpose of trying to interest him in the purchase of the defendant's said property, and spent about one-half to three-quarters of an hour pointing out the desirable features of the property and the attractive price at which it could probably be purchased. About the 15th of July, John Donahoe told defendant that he was working on Bernard Kurtz and the other prospects, and defendant told him to continue his efforts. Some time in November, 1935, plaintiff had a conversation with defendant over telephone, in which the defendant told him that the house had been sold, but refused to reveal the name of the purchaser. In a later conversation over the telephone defendant told plaintiff that Mr. Windsor had bought the property.

The plaintiff's evidence did not show any communication or conversation between the plaintiff or his agent and the purchaser, Windsor, other than the letter of May 14, 1935, and the conversation between John Donahoe and Windsor about July 1, 1935; it did not show when the negotiations that resulted in the purchase of the property from the defendant by Windsor first began, and it did not show directly that such negotiations resulted from anything said or done by the plaintiff.

The testimony introduced by the defendant as to the matters covered by the plaintiff's evidence was substantially as stated by plaintiff's witnesses. The defendant introduced the evidence of Mr. Kauffman, president of the Bankers Trust Company of Des

Moines, Iowa, who testified that he had known the defendant all his life; that he was also well acquainted with James H. Windsor, who was a nephew of the witness' wife; that he was a trustee of property owned by Windsor, and had advised him in his financial affairs; that in the middle or late fall of 1935, Windsor consulted him about buying a property in the country; that witness went into a complete analysis of the extra items of cost Windsor would be put to if he built or bought a home in the country, his disadvantage in sending his children to school, and the possibility that, if he built a house in the country, the bids would be prohibitive; and that, after discussing different locations in the country that he might be able to secure for Windsor, he suggested that Windsor consider the purchase of the Denman house, which he was satisfied could.be bought at a small fraction of its cost. He further testified that, in order to purchase any property, he knew Windsor would have to secure a federal loan on the property purchased in addition to a personal loan, and that these loans would have to be secured through the bank of which Kauffman was president; that, as a result of this conversation, Windsor authorized him, Kauffman, to find out what price the Denman house could be purchased for and what arrangements for loans could be made; that Kauffman finally obtained an offer from Denman to sell the house for $14,000; that arrangements were made through Mr. Kauffman's bank for a first mortgage loan of $11,200 on the house under the provisions of the FHA, and for a personal loan to Windsor of $3,000, and the sale was thus consummated.

The purchaser, Windsor, testified that the Denman family and his family were close friends; that he had known the defendant all his life, went around in the same social set with him, and had been in the house in question a good many years back; that his offices were in the same building as those of Mr. Denman and that he frequently saw him during 1933, 1934 and 1935; that he had known that the Denman house was for sale since February or March, 1934, after the death of the defendant's father, whose home it had been; that about that time one Joe Chamberlain, a member of the Chamberlain-Kirk brokerage firm, had tried to interest him in buying it; that at the time John Donahoe called upon him and talked with him about the Denman house, he was not interested in it, and neither Donahoe's letter nor his conversation had any influence upon him in the ultimate purchase of

the house; that he had no thought of purchasing it prior to his conversation with Mr. Kauffman in November, 1935; that prior to that conversation he had begun thinking about a house in the country and was interested in buying or building a home in the country until his conversation with Mr. Kauffman; that when Mr. Kauffman suggested the undesirability of a country home and the possibility of securing the necessary loans and purchasing the Denman home it was the first time that he had given the purchase of the Denman home any consideration.

This was the status of the evidence when the defendant's motion for a directed verdict was presented. Although stated in different ways, the substance of the motion was that, ''there is no evidence and no assumption or presumption or inference from any evidence that would be sufficient or competent to sustain a verdict in favor of the plaintiff, which must as a matter of law be based upon the theory that the plaintiff was the efficient and procuring cause of the sale to Windsor.''

 There is no question that the burden was upon the appellant to show that he was the efficient and procuring cause of the sale to Windsor. Appellant contends that, having shown that he was authorized to procure a purchaser for this property, that he did contact Windsor and use his efforts to sell the property to him, and that the property was thereafter purchased by said Windsor from the defendant, there was sufficient evidence from which the jury could find that he was the efficient and procuring cause of the sale. In support of this contention appellant cites Hanna & Henderson v. Collins, 69 Iowa 51, 28 N. W. 431; Blodgett v. R. R. Co., 63 Iowa 606, 19 N. W. 799; Montgomery v. O'Donnell, 178 Iowa 588, 159 N. W. 1025; Johnson v. Doubravsky, 181 Iowa 77, 163 N. W. 589; and Reid v. McNerney, 128 Iowa 350, 103 N. W. 1001.

Assuming but not deciding that such a rule may be applicable to some fact situations, we do not think it can be applied to all cases where a real estate broker has tried to interest a third person in a property which he has been authorized by the owner to sell, and where the owner and the. third person later get together and a sale is consummated, in the face of other reliable evidence that the owner and the purchaser were not brought together and that their negotiations were not brought about by anything done by the broker. If the rule were as contended for by appellant, then, even though an owner of real estate had been

negotiating directly with a prospective purchaser for its sale before the broker had been authorized to try to procure a purchaser, if, after being thus authorized, the broker contacted the prospective purchaser with whom the owner had been negotiating, and thereafter the owner sold the property to such prospective purchaser, it would be for a jury to determine whether or not the broker was the efficient and procuring cause of the sale, no matter what evidence there might be to show that the negotiations resulting in the sale were in no way caused by or connected with any activity or effort on his part.

Nor do the cases cited by appellant sustain the broad application of the rule for which he contends. None of these cases, nor any other case to which our attention has been called, goes to the extent of holding that the mere fact that the owner of property lists it with a broker for sale; that the broker tries to sell the property to one whom he considers a prospective purchaser; and that a sale is afterwards consummated between the owner and this person, is sufficient, in and of itself, to carry a case to the jury, regardless of what other evidence there may be in the case. The very words "efficient cause" and "procuring cause" indicate that there must be some causal connection between the efforts of the broker and the sale that is made, and the mere fact that a sale is made to a person by the owner, after such person had been contacted by the broker, cannot be proof of the fact that such sale resulted from the efforts of the broker. *Post hoc, ergo propter hoc,* has always been recognized as an outstanding fallacy in logic and cannot be recognized as a valid basis for a positive rule of law. It seems to us, therefore, that such a status of the evidence, which shows no more than that the broker was authorized to sell the property, that he contacted a prospective purchaser, and that such prospective purchaser afterwards purchased the property from the owner, does not present *evidence* that the broker was the efficient and procuring cause of the sale, but that, at most, it can only give rise to an *inference* or *presumption* sufficient to make a prima facie case for the jury.

Obviously, such inference or presumption, if it existed, was rebuttable. The defendant introduced direct evidence tending to show that Windsor had known that the property was for sale long before he was approached by the plaintiff; that a member of another real estate agency, with which the property had been listed prior to its listing with the plaintiff, had tried to interest

Windsor in buying this property long before the plaintiff had been authorized to sell it; that Windsor had known the defendant, Denman, and his family all his life, was a member of the same social set in which Denman moved, was familiar with the house in question, saw Denman frequently during the time here involved, and never looked at the property or talked to Denman about it until after the banker, Kauffman, who was Windsor's financial advisor, trustee of some of his property, and the husband of his aunt, had suggested the possibility and advisability of purchasing it; that the purchaser, Windsor, did not express any interest in the property when talking to plaintiff's agent, John Donahoe, but, on the contrary, according to the evidence of John Donahoe himself, put up a sales resistance talk, spoke of his inability financially to purchase such a property, and "wasn't in a very amiable mood"; that from the time the plaintiff first began to try to interest Windsor in the property in May, 1935, until about the middle of November of the same year, Windsor was in no way interested, because he was contemplating buying or building a home in the country; that the first time Windsor took any interest in the Denman property or gave any thought to purchasing it was about the middle of November, 1935, when he had a talk with Kauffman in regard to buying or building in the country, and was dissuaded from this idea by Kauffman, who also suggested the possibility of purchasing the Denman home and of procuring the loans by means of which he would be able to finance such purchase. This evidence did not consist of the testimony of the defendant alone, but it was supplied by the testimony of both Windsor and Kauffman. It is in no way denied by or in conflict with other facts or circumstances in evidence, and there is nothing in the record to weaken or destroy its credibility.

 This court is no longer committed to the doctrine that a mere scintilla of evidence is sufficient to make a case for a jury, and will sustain a trial court in directing a verdict where, if the case were submitted and a verdict returned by a jury against the moving party, it would be the trial court's duty to set it aside. This doctrine was definitely announced in Meyer v. Houck, 85 Iowa 319, 327, 52 N. W. 235, 237, wherein we said:

"Our conclusion is that when a motion is made to direct a verdict, the trial judge should sustain the motion when, consider-

ing all of the evidence, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests. The adoption of this rule is no abridgement of the right of trial by jury.''

Since the adoption of this rule we have steadily adhered to it and have expressly reaffirmed it in many other cases.

In McGlade v. City of Waterloo, 178 Iowa 11, 13, 156 N. W. 680, 681, we said:

''We have repudiated the scintilla doctrine, and announced the rule that a trial judge should sustain a motion to direct whenever, considering all of the testimony, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests. * * *

''For example, if the testimony offered by the party having the burden, is in conflict with undisputed facts, and especially with physical facts which are a verity, or is such that, under all the circumstances, it cannot, in the nature of things, be true, or is such as that it is entirely and wholly inconsistent with any other theory than that the witnesses must have been mistaken, the trial court is justified in directing, and it is its duty to direct, a verdict for the other party. Artz v. Chicago, R. I. & P. R. Co., 34 Iowa 153; Payne v. Chicago, R. I. & P. R. Co., 39 Iowa 523; Bloomfield v. Burlington & W. R. Co., 74 Iowa 607, 38 N. W. 431.''

See, also, Wendt v. Foss, 161 Iowa 122, 140 N. W. 881; Hirschl v. Case Threshing Mach. Co., 85 Iowa 451, 52 N. W. 363; Reeder v. Dupuy, 96 Iowa 729, 65 N. W. 338; Barnhart v. Chicago, M. & St. P. R. Co., 97 Iowa 654, 66 N. W. 902; Hurd v. Nielson, 100 Iowa 555, 69 N. W. 867; Cherry v. Des Moines Leader, 114 Iowa 298, 86 N. W. 323, 54 L. R. A. 855, 89 Am. St. Rep. 365; Schmidt v. Hayden, 205 Iowa 1369, 219 N. W. 399; In re Work's Estate, 212 Iowa 31, 233 N. W. 28; Dickson v. Young, 208 Iowa 1, 221 N. W. 820.

We think the status of the evidence in the instant case was such that, had the trial court overruled the motion for a directed verdict and a verdict been rendered in favor of the plaintiff, it would have been the duty of the trial court to set aside the verdict thus reached. Under the rule above considered, the trial

court was, therefore, right in sustaining the motion for a directed verdict, and its ruling is, therefore, affirmed.—Affirmed.

HAMILTON, C. J., and ANDERSON, KINTZINGER, PARSONS, RICHARDS, STIGER, and SAGER, JJ., concur.

MITCHELL, J., takes no part.