KANSAS & ARKANSAS VALLEY RAILROAD COMPANY
*v*. FITZHUGH.

Opinion delivered November 30, 1895.

NEW TRIAL,—JURISDICTION OF EQUITY TO GRANT.—When a party who is himself free from fault, and against whom an unjust and inequitable judgment at law has been rendered, has lost his right of appeal by unavoidable accident, as by the death of the presiding judge before signing the bill of exceptions, a court of equity has power to grant relief by compelling the successful party to submit to a new trial at law.   (BUNN, C. J., dissenting.)

MASTER AND SERVANT—NEGLIGENCE.—A railroad company is liable for the killing of an employee on its track by an engine, although he was guilty of contributory negligence, when its employees in charge of the engine knew of his danger in time to have avoided the injury by the use of ordinary care, and failed to do so.

SOLEMN ADMISSION—ESTOPPEL.—Where, in an action against a railroad company for the death of an employee caused by the negligence of an engineer, defendant admits on the trial that deceased and such engineer were not fellow servants, it cannot on appeal claim that such employees were fellow servants.

Appeal from Crawford Circuit Court in Chancery.

JEPHTHA H. EVANS, Judge.

Complaint by the Kansas & Arkansas Valley Railway Company and the Little Rock & Fort Smith Railway Company against H. L. Fitzhugh, administrator of the estate of John Franklin, deceased. The facts are stated by the court as follows : This is a proceeding in equity to procure a new trial in an action at law.   It is the same case in which an application for a writ of mandamus was presented to this

court, asking that the clerk of the Crawford circuit
court be compelled to sign the bill of exceptions.
The presiding judge died before signing the bill of
exceptions.    As the proper course to pursue was a
matter of doubt, counsel for appellant not only presented
a petition for mandamus, but filed a complaint in equity
for a new trial.    The complaint alleged that on May
4, 1893, H. L. Fitzhugh, as administrator of the estate
of John Franklin, deceased, had sued the defendants at
law in the Crawford circuit court for the benefit of the
wife and next of kin of said deceased; that said admin-
istrator, for a cause of action, alleged that said Franklin
had been killed by the negligence of the employees of
said railway companies while operating and running one
of their engines; that said action at law had been tried
before a jury in said court, the Hon. Hugh F. Thomason,
judge, presiding; that a verdict and judgment for $3,050
had been rendered against complainants; that on the
same day a motion for new trial had been filed, over-
ruled, exceptions saved, and appeal prayed; that sixty
days had been granted complainants in which to prepare
and file their bill of exceptions; that, eight days after-
wards, and before the bill of exeptions could be pre-
pared and filed, the judge who had presided at the trial
was stricken down while on the bench, and died shortly
afterwards; that the death of the judge left no one
who could sign the bill of exceptions, and that their
right of appeal was thus cut off, working complainants
great and irreparable wrong.    The complaint set out
the facts of the trial in the case at law.    A bill of ex-
ceptions, containing the evidence, the rulings, and in-
structions of the court on the trial at law, was made
an exhibit to the complaint.    The bill of exceptions had
been prepared and agreed to by the counsel for both
parties as a correct bill of exceptions, but had not been
signed by the judge.    The complaint further alleged

that the circuit court had committed errors prejudicial to the rights of complainants, and that the verdict of the jury was without evidence to support it, and the judgment unjust and inequitable. The complaint prayed that the cause be heard, and that the appellee be compelled to submit to a new trial at law, or that his judgment be enjoined, and for other proper relief.

Appellee filed an answer, admitting most of the facts alleged, but denying that the court committed any errors in the trial at law, or that the judgment was without evidence to support it, and denying that complainants were entitled to the relief prayed.

The cause was heard on the complaint, answer and exhibits thereto. The bill of exceptions prepared by counsel, and containing the evidence as taken down by a stenographer, was by consent read in evidence, it being agreed that it contained a full and correct statement of the evidence and rulings of the court in the trial at law.

The chancellor dismissed the complaint for want of equity, from which decree an appeal was taken.

*Dodge & Johnson* for appellant.

1. A chancery court has power to grant the relief prayed. When from fraud, accident or mistake, one litigant obtains an unfair advantage of another, before or *after* judgment, courts of equity are bound in equity and good conscience to grant relief. In this cause, it was *accident*—the death of the judge presiding. Rapalje & Lawrence, Law Dict. p. 10; 1 Bouv. Law Dict. 45; Story, Eq. Jur. vol. 1, sec. 78; 1 Am. & Eng. Enc. Law, p. 824; 3 Blackst. Com. p. 43; Bisph. Eq. sec. 174; 1 Pom. Eq. Jur. 446; 15 Fla. 396; 1 Ark. 43, 195; 5 *id.* 501; 6 *id.* 84, 360; 11 *id.* 443, 583; 13 *id.* 604; 14 *id.* 36; 25 *id.* 372; 35 *id.* 107; *Ib.* 124; 38 *id.* 283; 40 *id.* 338; 40 *id.* 552; 38 *id.* 283; 48 *id.* 536; 51 *id.* 343.

2. The court should restrain defendants from enforcing the judgment at law, and compel them to submit to a new trial at law. See cases cited *supra*.

3. Upon the merits of the case, the proof shows that Franklin was guilty of *contributory negligence*, and he cannot recover. 36 Ark. 371 ; 36 *id*. 41 ; *Ib*. 451 ; 46 *id*. 513 ; 49 *id*. 257 ; 46 *id*. 555; *Ib*. 388 ; 51 *id*. 467 ; 56 *id*. 271.

4. When one takes employment in the service of a railroad, he assumes all the risks and hazards incident to his employment. 35 Ark. 613 ; 46 *id*. 396 ; *Ib*. 569 ; 51 *id*. 467 ; 56 *id*. 271 ; 145 U. S. 418 ; 41 Ark. 549; 53 A. & E. R. Cas. 421 ; 94 Cal. 326; 53 Fed. 61; 17 *id*. 882–6 ; 156 Mass. 503 ; 75 Ill. 106 ; 27 Minn. 137 ; 47 Miss. 420 ; 2 Mees. & W. 244 ; 4 Bing. 142; 14 S. W. 243 ; 30 A. & E. R. Cas. 163 ; 13 N. W. 508 ; Wood on Mast. & Serv. sec. 382 ; Sh. & Redf. Negl. sec. 99. In view of the evidence, the verdict was contrary to law and the evidence.

5. The deceased was fellow servant of the engineer, and the company is not liable. Underhill, Torts, 52 ; 85 Ill. 500 ; McKinney on Fellow Servants, p. 28, and note ; 3 Atl. 11 ; 35 N. W. 582; 14 Minn. 360 ; 32 *id*. 54 ; 29 *id*. 162; 33 Fed. Rep. 801 ; 141 Mass. 565. The fellow servant act is unconstitutional; but if not, the engineer and deceased were fellow servants, under the act.

*Chew & Fitzhugh* and *Williams & Bradshaw*, for appellee.

1. It was admitted in open court that deceased and the fireman and engineer *were not fellow servants*. The case was tried on that theory. Appellant is bound by that admission.

2. It is conceded that courts of equity may grant relief against judgments at law, where the unsuccessful party was prevented from making a meritorious defence

at law by fraud, accident or mistake, where he himself
has been free from negligence. 35 Ark. 107 ; 40 *id.*
338 ; 51 *id.* 343 ; *State* v. *Hill*, 50 *id.*   In these cases, it
was held that when one had lost his right to have the
court pass on his motion for a new trial, and could show
that he was free from negligence, and had a meritorious
defence, and that the judgment was unjust and un-
equitable, the chancellor had jurisdiction to grant a new
trial.   All these things must concur.   But this court
has never held that chancery could relieve against a
judgment where a party had made his defense at law,
has presented his motion for a new trial, and the same
has been overruled, and he has then lost his appeal by
accident.   40 Ark. 535 ; 51 Ark. 343 ; 48 *id.* 539.

3.   Courts of equity will not grant a new trial if
there is any evidence to support the verdict.   40 Ark.
555 ; 50 *id.* 458 ; 13 *id.* 604.   The judgment *must* be
unjust and unconscionable, and it must appear that the
result would be different.   3 Pom. Eq. sec. 1364 ; High
on Inj. 114, 116 ; 6 Johns. Ch. 479 ; 1 Eden, Ch. 14 ; 9
N. J. Eq. 585 ; 31 N. J. L. 329 ; 42 Tex. 258.

4.   The trial judge having overruled the motion for
a new trial, the chancellor has no jurisdiction to enter-
tain another application for the same purpose.   It is *res
judicata.*   Cases *supra* ;  16 Am. &. Eng. Enc. Law,
621 ; 4 Bibb, 168 ; 4 Ind. 313 ; Herm. Est. p. 569 ; 1
Johns. Ch. 91 ; 2 Black, Judg. 691–2 ; 4 Bibb, 168 ; 11
Fed. Rep. 104 ; 15 *id.* 299 ; 10 Mo. 100 ; High on Inj.
115 ; 20 Wis. 42, 205 ; 35 N. E. 615 ; 147 Ill. 410.

5.   Appellants were guilty of negligence in not pre-
senting the bill of exceptions to the judge before his
death. 51 Ark. 278 ; 79 Ky. 477 ; 38 Ark. 283 ; 2 Story,
Eq. 174–80 ; 5 Ark. 502 ; 3 Pom. Eq. 1364, and note ; 6
Johns. Ch. 89 ; 18 Vt. 45 ; 2 Paige, 321 ; 4 Ga. 175 ; 31
N. J. Eq. 318 ; 60 Ind. 203 ; 73 Ill. 205.

6. Upon the merits of the case, it is shown that appellants were grossly negligent in not furnishing deceased a safe place to work, and in not providing reasonable rules and regulations for the management of their yard and the control of their engines. 39 Ark. 29; 54 *id.* 289; 48 *id.* 345; 8 Am. & Eng. R. Cases, 105; 15 S W. 108; 23 *id.* 1056; Wood on Railways, 1488; 28 Am. & Eng. R. Cases, 538; 17 S. W. 185; 10 Am. & Eng. R. Cases, 658; 59 N. W. 192; 2 Am. & Eng. R. Cases, 70; 12 *id.* 108; 5 *id.* 590.

7. The jury found there was no contributory negligence, and this finding is sustained by ample evidence. 8 S. W. 129, and note; 16 *id.* 335; 54 Ark. 289; 114 U. S. 617; 46 Ark. 403; 128 U. S. 91; 76 Wis. 130; Bailey on Master's Liability, p. 445; 139 U. S. 558; 10 Am. & Eng. R. Cases, 662; 36 Ark. 50; 46 *id.* 394.

**Jurisdiction of equity to grant new trials.** RIDDICK, J., (after stating the facts.) The first question presented is whether, in a case where there has been a trial and judgment at law, and the right of appeal has been cut off by the death of the presiding judge before signing the bill of exceptions, a court of equity has power to grant relief against such a judgment, however unjust and oppressive it may be. The practice in such cases is not uniform in the different states of the Union. In some of them it seems to be held that there is no relief. *Davis* v. *President of Menasha Village*, 20 Wis. 42. In other states, the appellate courts grant a new trial as a matter of right, without regard to the merits of the controversy, where a party has, by the death of the presiding judge, lost the power to file a bill of exceptions. *State* v. *Weiskittle*, 61 Md. 49; *Wright* v. *Judge of Superior Court*, 41 Mich. 726; *Commissioners* v. *Steamship Co.* 98 N. C. 163. The exact point has never been before this court, though in one case it was said that, "courts of chan-

cery are competent to relieve against any hardships
arising from accident, or mistake, or fraud, if from
any such cause the bill could not be presented in the
time allowed." *Carroll* v. *Pryor*, 38 Ark. 283. And
the power of courts of equity to grant relief against
fraud, accident or mistake has always been recognized.
In the case of *Leigh* v. *Armor*, 35 Ark. 123, the court
said: "It is well settled that when a judgment is
obtained in a court of law by fraud, accident or mis-
take, unmixed with negligence on the part of the party
against whom it is rendered, a court of equity has
jurisdiction, on a showing of a meritorious defense or
cause of action, to compel the party obtaining the judg-
ment to submit to a new trial. But it is agreed that
this power should be exercised with great caution, and
the application of the doctrine is generally restricted,
and is confined to cases which present peculiar circum-
stances, under the maxim that there must be an end of
litigation." In that case it was held that when a judge
of the circuit court was prevented by sudden sickness
from disposing of a motion for new trial during the term
at which the judgment was rendered, the party filing the
motion might, upon showing that he has a meritorious
defense or cause of action, and that he has been guilty
of no negligence, obtain relief in a court of equity.
The reason given was that the party had no remedy at
law. The doctrine of this case has been several times
approved. *Vallentine* v. *Holland*, 40 Ark. 338; *Harkey*
v. *Tillman*, *Ib.* 551; *Johnson* v. *Branch*, 48 Ark. 535;
*State* v. *Hill*, 50 Ark. 458; *Whitehill* v. *Butler*, 51 Ark.
341; *Jackson* v. *Woodruff*, 57 Ark. 599.

The circuit court in *Leigh* v. *Armor* had not passed
upon the motion for a new trial. In this case the motion
for a new trial was presented to and determined by the
circuit court, and the party lost his right of appeal by
the death of the circuit judge before signing the bill of

exceptions. But, while the facts are different, the principle seems to us the same, and, after considering the matter, we have concluded that when a party who is himself free from fault, and against whom an unjust and inequitable judgment has been rendered, has lost his right of appeal by unavoidable accident, a court of equity in this state has the power to grant relief. *Carroll* v. *Pryor*, 38 Ark. 283 ; *Oliver* v. *Pray*, 19 Am. Dec. 595, and note ; Black on Judg. 1 vol. 356 ; Freeman on Judg. 2 vol. 484–485. While the enlarged powers of law courts, under modern procedure, to grant new trials after the expiration of the term has dispensed with the frequent exercise of this ancient jurisdiction of courts of equity, yet in this state it still exists, to be used in peculiar cases where the party is without remedy at law. *Leigh* v. *Armor*, 35 Ark. 126 ; *Jacks* v. *Adair*, 33 Ark. 161.

In assuming jurisdiction in such cases, courts of equity do not undertake to exercise supervisory or appellate power over the circuit courts. They have no right to interfere in any way with the judgments or other proceedings of a court at law. They assume only the right to act upon the parties to the suits at law. *Pelham* v. *Moreland*, 11 Ark. 442 ; *Yancey* v. *Downer*, 15 Am. Dec. 38 ; Pomeroy's Equity, vol. 3, sec. 136 ; Black on Judgments, 1 vol. 356.

When a case of hardship in the judgment of a court at law is alleged, against which the party has lost his remedy at law by unavoidable accident, fraud, or mistake, a court of equity, though proceeding with great caution, will inquire into the facts, and, if deemed proper, will compel the successful party to submit to a new trial at law, or, in default thereof, will restrain him by injunction. But, as has been frequently said, a court of equity will not interfere in such cases, unless "justice imperatively demands it." "It must clearly

appear that it would be contrary to equity and good conscience to allow the judgment to be enforced, else it declines to impose terms upon the prevailing party." *Whitehill* v. *Butler*, 51 Ark. 343 ; *Johnson* v. *Brande*, 48 Ark. 535 ; *Jackson* v. *Woodruff*, 57 *ib.* 599.

We will now consider whether the case made here is one calling for the interference of a court of equity. John Franklin, an employee of the appellants, while working in their yards at Van Buren, was struck and killed by an engine owned by them and operated by their employees. H. L. Fitzhugh, the administrator of his estate, brought suit against appellants, alleging that the death of Franklin was occasioned by the negligence of appellants · and their employees while operating said engine. The answer of appellants denied negligence, and set up contributory negligence, and, further, that the injury was occasioned by the act of a fellow servant, for which they were not liable. The evidence at the trial showed that Franklin, at the time of the injury, was working in the yards of appellants at Van Buren. He was clearing under a switch rod, stooping over at his work, with his back towards a switch engine, which was approaching along the same track upon which he was working. Within eight or ten feet of him, on a different track, was another engine which, to use the language of the witness, was "popping off steam." The noise of this escaping steam deadened the sound made by the approaching switch engine. The testimony of several witnesses show that Franklin's position and actions indicated that he was unaware of the approach of the switch engine and of the danger that threatened him. So apparent was his danger, and the fact that he was ignorant of it, that several of these witnesses hallooed at him, but the noise of the steam from the other engine was so great that he did not hear. Both the en-

Liability of master for killing of servant.

gineer and fireman in charge of the switch engine testify that they saw Franklin as they approached the place where he was working. The engine was backing, but it had no cars attached, and the tank was wedge shaped, and offered no obstruction to the sight of the engineer until he came within a few feet of Franklin. He was in plain view for some distance before they reached him. They noticed that he was stooping over at work, his back to the engine, apparently unaware of its approach. When about forty yards from him, the fireman hallooed at him, and again endeavored to attract his attention when he was within twenty-five or thirty steps of him. The fireman testified that he did not signal the engineer, because the engineer saw Franklin as well as he did. Before reaching Franklin, the engineer applied the air brakes, and checked the speed of the engine, but when within seven or eight feet of him he released the brakes, and the engine rolled on, and Franklin was struck and killed. The engineer says that he saw Franklin step off the track before he released the brakes, but in this he is plainly mistaken. Franklin became aware of the approach of the engine, and endeavored to escape, but the engine struck either his leg or the handle of his shovel, and he was thrown on the track and killed. There was also evidence tending to show that no sufficient effort was made to stop the engine, and that the engineer was guilty of carelessness.

But it is said that Franklin was himself guilty of negligence. This may be true, yet the finding of the jury is justified on the ground that the employees of defendants in charge of the engine became aware of his danger in time to have avoided the injury by the use of ordinary care. It is well established that when a defendant, after having become aware of the plaintiff's negligence, and the danger to which it exposes him, fails to exercise ordinary care in avoiding it, he is liable for

the injury. *St. L. I. M. & So. Ry.* v. *Wilkerson*, 46 Ark. 523 ; *St. L. I. M. & So. Ry. Co.* v. *Monday*, 49 *ib.* 263 ; Whittaker's Smith on Neg. 375 ; Thompson on Neg. 2 vol. 1157 ; Wharton on Neg. secs. 334 and 335 ; Sherman & Redfield on Neg. sec. 493.

It is further said that if the engineer was guilty of negligence causing the injury, it was the act of a fellow servant, for which defendants are not liable. But the evidence shows that on the trial at law the defendants expressly admitted that the deceased, John Franklin, and the engineer were not fellow servants. The bill of exceptions, which was agreed to be correct, and introduced as evidence by appellant, after setting out the evidence introduced by the plaintiff, proceeds as follows : "Defendants here admitted that the deceased, John Franklin, and the engineer and fireman were not fellow servants, and told plaintiff that they so admitted to the jury. The plaintiff then rested." This is what is called in the books a "solemn admission," made in the course of a judicial proceeding for the purpose of dispensing with evidence or argument touching the matter admitted. Having solemnly admitted on the trial that the deceased John Franklin and the engineer and fireman were not fellow servants, the defendant cannot now dispute it, or assume a position inconsistent with the admission. If the circuit court committed an error on that point, it was one invited by the defendants, and of which they cannot complain. 1 Greenleaf on Ev. 186 ; 1 Taylor on Ev. 676 ; Elliott's Appellate Pro. sec. 630.

Our conclusion is that the facts of this case are not sufficient to warrant the interference of a court of equity, and the decree of the chancellor dismissing the complaint for the want of equity is affirmed.

BUNN, C. J., (dissenting). This is a bill in chancery for an order granting a new trial in the Crawford

*Estoppel by admission.*

circuit court, and the majority of the court holds, over the objection of the defendant and appellee, that the chancery court had jurisdiction, but denies to plaintiff the relief sought because there is not merit in the bill. From this opinion I dissent, not on account of the merit that may or may not be in the original cause of action or defence, but because I think, first, that equity has no jurisdiction to hear and determine the precise question involved in this case; and, second, because, if it has such jurisdiction, it can only inquire as to whether or not the right of appeal has been lost by accident, as alleged, and, having ascertained such to be the fact, it must grant the new trial without reference to the merit or demerits of the judgment appealed from, because the right of appeal is absolute and unconditional, and should be conceded without any other ascertainment than that some one of the known causes of equitable jurisdiction has occurred and been presented.

I do not, at all events, think there is any jurisdiction in equity to give the relief to be desired in a case like this—to secure the opportunity to be heard in the appellate court, directly or by circumlocution; for the law court has passed on that question, and equity has no reviewing or appellate powers.

This court has frequently held that the person who has presided as judge in the trial court is the person to certify the bill of exceptions. But this is as far as this court has ever gone, or ever had occasion to go. No case like this has ever been presented to this court for its consideration, and therefore whatever may be done today has not the sanction of precedents here.

This proceeding is, perhaps, not such as will necessarily call forth any expression of opinion as to what the proceeding should be, but I am of the opinion that when the presiding judge has died, and it becomes impossible, therefore, to obtain the bill of exceptions ac-

cording to the very letter of the law, the successor of the deceased judge should determine and certify the bill of exceptions. This is, of course, not the mode of securing a bill of exceptions according to the best evidence, but only according to the best obtainable. As long as the person who tried the case lives, he should certify the bill of exceptions whether in or out of office, for his is the best evidence. Some of the states have made provision by statute for such a contingency as that which now confronts us. In 'others, where there is no statutory provision, the courts, under the head of their inherent powers to regulate judicial procedure in the absence of statutory provision, have adopted the method suggested, as being the only one that can possibly preserve the integrity of common law judgments on the one hand ; and secure the perfect right of appeal on the other.

Whatever may theoretically be imagined, practically there never could be any great difficulty or inconvenience to the succeeding judge to determine what is a proper bill of exceptions, for it is rare that any great number or important points of difference present themselves, and to settle these the few necessary witnesses could readily be recalled to repeat what was said by them on the trial. The case at bar is a fair sample of what generally occurs in such cases—an agreement between counsel as to the facts.