## LOUISVILLE & N. R. CO. v. MORLAY.

(Circuit Court of Appeals, Seventh Circuit. April 6, 1898.)

No. 449.

1. RAILROADS—INJURY TO PERSON NEAR TRACK—CONTRIBUTORY NEGLIGENCE.
    Where a workman, engaged in setting a curbstone in a street of a city, was guilty of contributory negligence, and was struck by a locomotive, there being evidence tending to show that the servants of the railroad might, by the exercise of proper diligence, after perceiving his danger, have avoided harming him, the question was properly left to the jury.

2. SAME.
    The ordinary presumption is that a workman engaged in street work near a railroad track will look after his own safety on the approach of a train; but, when the engineer sees that he is not doing so, it becomes the engineer's duty to use all reasonable means in his power to arrest the man's attention and avoid injuring him; and it was proper to refuse an instruction that it was not the duty of the engineer to stop his train even if he saw the man continuing at his work.

3. TRIAL—INSTRUCTIONS.
    While one clear statement of a proposition, with an explanation of the evidence bearing upon the point, would seem to be enough, a judgment will not be reversed because of needless repetitions in a charge to the jury.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

J. M. Hamill, for plaintiff in error.
M. Millard, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The chief question here is whether the court erred in refusing to instruct the jury to find a verdict for the defendant. The defendant in error, Walter Morlay, at the time of the injury for which the action was brought, was engaged in setting a curbstone in Eighth street, in East St. Louis, near the track of the railroad of the plaintiff in error. While so engaged he was struck by the locomotive of a freight train coming from the southeast, which, if observant, he might have seen for half a mile or more before it came upon him. A passenger train from the other direction would have been due in a few minutes, and it has been insisted in argument that the necessity to watch for the approach of that train was an excuse for what might otherwise be deemed a lack of vigilance in looking to the opposite direction from which no regular train was then due, the freight train being near two hours behind its schedule time. The declaration is in three counts. The negligence alleged in the first is that the defendant so carelessly and improperly drove and managed a locomotive and freight train that the plaintiff was thereby struck and injured. In the second count it is alleged that the defendant then and there drove a locomotive and freight train upon and across the street where the plaintiff was working without ringing any bell or sounding any whistle at the distance of at least eighty rods from the crossing, by means of which neglect the plaintiff was injured. In the third count it is alleged that there was an ordinance of the city of East St. Louis which required all freight trains to run within the corporate limits of the city at a speed not exceeding six miles an hour, and that the train which hit the plaintiff was running at a very much greater speed, to wit, twenty-five miles an hour. There was evidence to support the charge of each count; the speed of the train being put by witnesses on one side at six to eight miles, and on the other side at ten to fifteen miles an hour. The speed was probably near the higher rate stated, since the train was behind time, and close upon the time of the outgoing passenger train, and the plaintiff, though standing in the ditch in which the curbstone was being set, was struck with such force as to be hurled a distance of eight or ten feet (considerably further according to some of the witnesses), was rendered unconscious, and suffered permanent injuries.

We think it beyond dispute that the defendant in error was guilty of contributory negligence, but do not find it necessary to state the evidence on the point. It is contended that, if contributory negligence be conceded, there was still a right of recovery, because the servants of the railroad company in charge of the train, after perceiving that the defendant in error was unaware of the train's approach, might, by the exercise of proper diligence, have avoided harming him. There is evidence in the case which made that a question for the

jury. Aside from the presumption that the defendant in error did not intentionally incur injury, there is in the record his own testimony that he did not know that the train was near him. One witness testified that the train approached very quietly, and that he heard no ringing of the bell or sounding of the whistle or other signal. Other witnesses testified to the same effect. The engineer who had been in charge of the train testified that when he saw that the man did not pay any attention to the train coming, and the fireman was ringing the bell, and he still paid no attention, he grabbed the whistle lever with one hand, and set the air brake with the other, and gave two quick blasts; that this was done when he was about three car lengths from the man; that the train was running six or seven miles an hour; that, when he saw the man at work, he did not know, or have means of knowing, whether it was one of the sectionmen, or who it was; that it was a common occurrence to see people on the track who would step off before they were approached; that, so far as he had observed, there was no indication that the man was going to stay there, else he would have stopped; that his impression was that the man would naturally work until he got within a reasonable distance, and then step aside, and, it being outside of the rail, it would take him considerably less time to get out of the range of the car; if he had any reason to suppose that he was going to remain there, and had gotten a signal to stop, he would have stopped; that a signal with the hand would have stopped him; that he could have stopped easily; that, after the blowing of the whistle, the fireman shouted at the man before he was hit; that the fireman shouted two or three times. The fireman's testimony was that he was ringing the bell constantly; that the engineer gave the alarm signal when about 300 feet from the man; and that, after that signal was given, he (the fireman) shouted to the man as loud as he could, to try to call his attention to the train, but that he never made a move in the way of looking towards the train; that he moved his position once,—that is, when they were about three or four blocks away from him; that he could not say whether he looked in the direction of the train, but that, when he raised up and moved down again in his position, he stayed in his position there until he was hit; that, when he shouted to him, the train was about two car lengths or sixty feet from him, and, if he had heard, he could have saved himself; that the train was going at the rate of six or eight miles an hour, and could have been stopped inside of three cars' lengths.

This testimony shows that, when from 200 to 300 feet away from the man, the danger of his situation was recognized by the engineer and fireman, and that from that moment to the instant of the injury they attempted, by blasts of the whistle and by shouts, to warn him; but the testimony of other witnesses and the fact that the man's attention was not awakened tend to show that the warnings were not given. Whether they were given, and whether an earlier effort to stop or reduce the speed of the train should have been made, were, therefore, questions for the jury. In Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, the contributory negligence asserted consisted in the injured party's standing in a dangerous position, too near the edge of a wharf which a steamboat was approaching at his call; and it was

urged that the officers of the boat, though they saw him waiting on the wharf, were not bound to anticipate his remaining in that position; but in response to that argument the court said:

"The jury might well be of opinion that, while there was some negligence on his part in standing where and as he did, yet that the officers of the boat knew just where and how he stood, and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence. If such were the facts, the defendant's negligence was a proximate, direct, and efficient cause of the injury."

It is insisted that there was error in the giving and refusing and modifying of instructions. Twice in its own charge and eleven times by modifications to special requests of the plaintiff in error for instructions on the subject of contributory negligence, the court charged the jury that, notwithstanding contributory negligence, the plaintiff could recover for the injury suffered, "if the jury found on the preponderance of the evidence that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of plaintiff's negligence"; and it is urged that the frequent repetitions of this proposition must have unduly influenced the jury. We perceive no good reason for such reiteration of a proposition. One clear statement, with an explanation of the evidence bearing upon the point, would seem to be enough; but we know of no instance of a judgment being reversed because a proper charge had been repeated. The blame for some of the needless repetitions here may be due to the needless number of requests for special instructions on the one subject of contributory negligence, the giving of which unmodified might also have had an undue effect upon the mind of the jury.

The court gave the following instruction:

"If the jury believe from the evidence that the engineer in charge of the locomotive saw the plaintiff was engaged in his work and apparently unconscious that the train was approaching him, notwithstanding the warning that may have been given him, then it was the duty of the engineer to use all reasonable means in his power to arrest the attention of the plaintiff, and avoid injuring him."

The objection that this instruction required of the defendant too high a degree of care is not tenable. In such an emergency the law and the dictates of humanity alike require that all reasonable effort to avoid harm be put forth. The ordinary rule of care required of a railroad company in propelling its engines or cars over public crossings has no application to a sudden emergency, when some one is seen to be unaware of near danger of being run down. Neither is the instruction objectionable because it assumes that the servants of the plaintiff in error did not use every reasonable effort to avoid injuring the plaintiff. It neither contains such an assumption nor an implication that the railroad was bound to exercise more care to avoid inflicting than the plaintiff was required to exercise to escape the injury.

The court properly refused to instruct broadly that it was not the duty of the engineer to stop his train even if he saw the plaintiff at work: that it was the duty of the plaintiff to keep out of the way; and that the engineer had a right to presume that, in obedience to the known custom of the country, the plaintiff, like all other pedestrians, would keep out of the way of the train. The ordinary presumption

would be that one in the position of the plaintiff would look after his own safety, but, when the engineer perceived that he was not doing so, it became his duty to put forth every reasonable effort to prevent injury. The judgment below is affirmed.