NEARY et al., Appellants, *v.* NORTHERN PACIFIC RY. CO. et al., Respondents.

(No. 2,538.)

(Submitted October 7, 1908.  Decided October 24, 1908.)

[97 Pac. 944.]

*Personal Injuries—Master and Servant—Railway Employees— Contributory Negligence—Failure to Look and Listen—Duty of Master—Evidence—Custom.*

Personal Injuries—Railroad Employees—Evidence—Contributory Negligence.

1. A freight conductor of experience, who had brought his train in and out of a railroad yard at least fifty times in eight months, and therefore presumably was acquainted with the dangers to be encountered there, proceeded to check the cars in his train while it was standing on a siding adjoining the main track, on which a passenger train was momentarily expected to pass. Switch engines were at work in the yard, tending to obscure the signals and noise of the passenger train. He could have checked the cars as well after the arrival of the passenger train as before, but, without waiting, he walked along the main track in the same direction as the expected train was to pass, and became so engrossed in his work as to be apparently oblivious to his surroundings. Though the track behind him was clear for a long distance, he did not turn to look, nor did he notice the train's whistle as it approached. But for his inattention he would have had ample time to step from the track before he was struck. *Held,* that he was, as a matter of law, guilty of contributory negligence.

Same—Railway Tracks—Failure of Persons to Look and Listen—Contributory Negligence.

2.   A railway track, known to be constantly in use, is itself a warning of danger, and it is the duty of one, whether technical trespasser or railway employee, who attempts to cross or travel upon it, to look and listen; failure to do so constitutes contributory negligence in case of accident.

Same—Railway Tracks—Duty of Persons Thereon to Look and Listen—Rule Applicable to Employees.

3.   While the rule that one who, in attempting to cross a railroad track or traveling laterally along it, fails to take the precaution of looking and listening and is injured by a train, is guilty of contributory negligence which will prevent recovery for the injuries inflicted, may not be applied strictly to railway employees who in the discharge of their duties are required to be upon or near the track, and who have a right to rely to some extent upon the persons in charge of moving trains to give proper signals and take precautions to avoid accidents, they cannot rely wholly upon such persons to do their duty in the premises, but must use due care to avoid injury to themselves.

Same—Contributory Negligence—Peril Apparent—Duty of Defendant.

4.   The rule that where one, through his own negligence, puts himself in a place of danger, he is as a matter of law precluded from recovery of damages for resultant injuries, is subject to the qualification that where defendant has discovered, or should have discovered, the peril of the person's position, and it is apparent that he cannot escape therefrom or for any reason does not make any effort to do so, the duty becomes imperative upon defendant to use all reasonable care to avoid the injury; if this is not done, the defendant is liable notwithstanding the negligence of the injured party.

Same—Railroads—Peril Apparent—Rule Above Applicable with Respect to Railway Employees.

5.   The above rule is applicable not only to technical trespassers upon railway tracks, with respect to passing trains, but also to employees who may become so absorbed in the performance of their duties as not to observe signals.

Same—Injury to Railway Employee—Peril Apparent—Duty of Defendant—Question for Jury.

6.   Where a passenger train was running at an extraordinary and illegal rate of speed within city limits, and was not under "full control" as required by the rules of the defendant railway company, and a freight conductor, though guilty of contributory negligence in having become so completely absorbed in checking his train while walking on the track on which the passenger train was momentarily expected to pass, as to fail to use the ordinary precaution of looking and listening, was struck and killed, the court erred in directing a verdict for defendant at the close of plaintiff's case. The question whether the engineer of the approaching train could, after discovering the peril of the conductor, have stopped his train and prevented the accident, should have been submitted to the jury.

Same—Custom—Evidence—When Inadmissible.

7.   While, in a personal injury action, where the act resulting in the injury is not negligence *per se,* it is competent to show that other persons experienced in the same business, under similar circumstances pursued the same course or custom, such evidence cannot avail where the injury has no connection with the course of action pursued.

Same—Railway  Employees—Custom—Evidence—When  Inadmissible.
    8.  Where the killing of a freight conductor by a passenger train was due to his contributory negligence in becoming so absorbed in checking his train, while walking on the track on which the passenger train was momentarily expected to pass, as to be oblivious to the dangers surrounding him, and in failing to use his faculties to avoid injury, evidence that it was a custom among trainmen generally to check their trains while walking on adjoining tracks as he had done was inadmissible, since it had no tendency to rebut the presumption of decedent's negligence.

Same—Railroads—Employees—Custom  Observed  in  Performing  Duties—Acquiescence by Defendant—Evidence.
    9.  Evidence showing that defendant railway company acquiesced in, or tacitly approved, the custom observed by conductors in checking their trains as referred to in the foregoing paragraph, and was therefore estopped to assert that decedent was negligent in following it, was properly excluded, since the negligence of defendant company in passively acquiescing in the custom was no excuse for the negligence of the deceased in observing it, if observance of it involved negligence on his part; if it did not, it was immaterial whether defendant acquiesced in it or not.

Same—Railroads—Employees—Excuse for Negligence—Obstructed Passageway  Between Tracks—Evidence.
    10.  The court also properly excluded evidence tending to show that the space between the track on which the train of deceased was standing and the track upon which he was walking while checking his train, was sometimes obstructed so as to prevent its use as a passageway.  The fact that it was obstructed at times would not have been proof that it was always obstructed, or that it was obstructed on the day of the accident.

*Appeal  from  District  Court,  Yellowstone  County;  Sydney Fox, Judge.*

ACTION by Marie Neary in her own right as heir at law of James S. Neary, deceased, and as guardian of her minor children, against the Northern Pacific Railway and A. J. Frost, one of its locomotive engineers.  Judgment for defendants, and plaintiffs appeal.  Reversed and remanded for a new trial.

*Messrs. Walsh & Nolan,* and *Mr. E. E. Enterline,* for Appellants.

Contributory negligence is no answer to a suit for a willful killing nor for a death occasioned by gross and wanton carelessness.  It is no defense in the criminal law and it is no defense in a civil action for damages.

The respondents contend that the engineer, at least after giving the usual signals to warn the deceased, had the right to continue on his course, trusting until the very last moment that the deceased would get off the track. But there seems to be no doubt about the proposition that a timely warning must be given to a man on a track ahead of a train who seems to be unheeding of its approach, by blowing the whistle, at least. The engineer is not entitled to indulge in any supposition that he will get off unless the usual warnings are given. (2 Thompson's Commentaries, 1736; *Louisville etc. Ry. Co.* v. *Morley,* 86 Fed. 240, 30 C. C. A. 6; *Bouwmeester* v. *Grand Rapids & I. R. Co.,* 63 Mich. 557, 30 N. W. 337; *Kelley* v. *Chicago B. & Q. R. Co.,* 118 Iowa, 387, 92 N. W. 45; *Louisville etc. Ry. Co.* v. *Trammell,* 93 Ala. 350, 9 South. 870; *Watts* v. *Richmond & D. R. Co.,* 89 Ga. 277, 15 S. E. 365; *Kansas etc. Ry. Co.* v. *Fitzhugh,* 61 Ark. 341, 54 Am. St. Rep. 211, 33 S. W. 960; *Esrey* v. *Southern Pac. Co.,* 103 Cal. 541, 37 Pac. 500; *Greene's Admr.* v. *Southern R. Co.,* 102 Va. 791, 47 S. E. 819; *Teakle* v. *San Pedro,* 32 Utah, 276, 90 Pac. 402; *Lake Shore & M. S. R. Co.* v. *Bodemer,* 139 Ill. 596, 32 Am. St. Rep. 218, 29 N. E. 1692; *Snyder* v. *Cleveland C. C. & St. L. R. Co.,* 60 Ohio St. 487, 54 N. E. 475; *Schlereth* v. *Missouri Pac. Ry. Co.* (Mo.), 19 S. W. 1134; *Haden* v. *Sioux City & P. R. Co.,* 92 Iowa, 226, 60 N. W. 537.)

The authorities which assert that the engineer may, until the last moment, act on the assumption that the person on the track ahead of his train will get off, are differentiated from the case at bar, as will be noticed from a study of their facts, by two important and controlling considerations. In the first place, they assume that the occupant of the track is a trespasser. The rule is announced in such cases—not in cases in which the person killed or injured is a servant of the company engaged in the performance of his duty on the track or other person rightfully occupying it. In the second place, it is assumed that the engineer is doing no wrong, that he is driving his engine along at a rate of speed that is not forbidden by law. They all contemplate

the case of a person on the track where he has no right to be, and at some place where the rate of speed is subject to no restriction, —substantially the case of a trespasser on the track out in the country between stations.

The question whether the engineer was not negligent in not stopping his train after he perceived that the warning given by the whistle was not heeded,—whether it was ordinary or reasonable care in him to assume, if he did assume, after what had transpired, that the man would step off,—was one for the jury. (*St. Louis S. W. Ry. Co.* v. *Bishop,* 14 Tex. Civ. App. 504, 37 S. W. 764; *Erickson* v. *St. Paul & D. R. Co.,* 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786.)

The deceased was under no obligation, as in the case of travelers on a crossing, at least as a matter of law, to "look and listen" for trains. The rule which imposes that duty is not applicable to servants of the railroad company at work upon the tracks. (*McMarshall* v. *Chicago R. I. & P. Ry. Co.,* 80 Iowa, 757, 20 Am. St. Rep. 445, 45 N. W. 1065-1067; *Jordan* v. *Chicago St. P. M. & O. Co.,* 58 Minn. 8, 49 Am. St. Rep. 486, 59 N. W. 633; *Snyder* v. *Cleveland C. C. & St. L. Ry. Co.,* 60 Ohio St. 487, 54 N. E. 475-477; *Pittsburgh & St. L. Ry. Co.* v. *Seivers,* 162 Ind. 234, 67 N. E. 680, 70 N. E. 133.) Accordingly, the deceased had a right to rely on being duly warned. (*Nelson* v. *New Orleans & N. E. R. Co.,* 100 Fed. 731, 40 C. C. A. 673; *Schultz* v. *Chicago & N. W. R. Co.,* 44 Wis. 638.)

Evidence that the person killed or injured was doing his work in the way and in the place in which it is customarily done, is always admissible to overcome any possible inference of contributory negligence, unless to do the work in the way in which it was done, or to occupy the place that was occupied, was inherently and necessarily negligent—an act of negligence *per se.* (*Prosser* v. *Montana C. Ry. Co.,* 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814; *Northern Pac. Ry.* v. *Wendel,* 156 Fed. 336; 1 Labatt on Master & Servant, 353.)

*Messrs. Wallace & Donnelly, Mr. John G. Brown,* and *Mr. R. F. Gaines,* for Respondents.

The decedent was guilty of contributory negligence in failing to look and listen. (*Hunter* v. *Montana C. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *Kenna* v. *Central Pac. R. Co.,* 101 Cal. 26, 35 Pac. 332; *Keefe* v. *Chicago & N. W. Ry. Co.,* 92 Iowa, 182, 54 Am. St. Rep. 542, 60 N. W. 503; *Cahill* v. *Chicago & A. Ry. Co.,* 205 Mo. 393, 103 S. W. 532; *St. Jean* v. *Boston & M. R. Co.,* 170 Mass. 213, 48 N. E. 1088; *Wilber* v. *Wisconsin C. Ry. Co.,* 86 Wis. 535, 57 N. W. 356; *Collins* v. *Burlington etc. Ry. Co.,* 83 Iowa, 346, 49 N. W. 848; *Carlson* v. *Cincinnati S. & M. R. Co.,* 120 Mich. 481, 79 N. W. 689; *Clark* v. *New York L. E. W. R. Co.,* 30 N. Y. Supp. 126, 80 Hun, 320; *Brady* v. *New York C. & H. R. Co.,* 20 R. I. 338, 39 Atl. 186; *Harrison* v. *Texas & Pac. Ry. Co.* (Tex. Civ. App.), 31 S. W. 242; *Buckmaster* v. *Chicago & N. W. Ry. Co.,* 108 Wis. 353, 84 N. W. 845; *Sours* v. *Great Northern Ry. Co.,* 84 Minn. 230, 87 N. W. 766; *Rutherford* v. *Chicago M. & St. P. Ry. Co.,* 57 Minn. 237, 59 N. W. 302; *Sharp* v. *Missouri Pac. Ry. Co.,* 161 Mo. 214, 61 S. W. 829.)

The engineer had a right to presume that a person walking on a track would leave it in time to avoid being injured, and to indulge in this assumption up to the last moment. (Beach on Contributory Negligence, 394; *Florida etc. R. Co.* v. *Williams,* 37 Fla. 406, 20 South. 558; *Pittsburg, C. C. & St. L. Ry. Co.* v. *Judd,* 10 Ind. App. 213, 36 N. E. 775.)

In checking his train, the decedent took a position which he knew was dangerous, and which danger must have been obvious to him by an ordinary exercise of his sight and hearing. Having presumed to follow the more hazardous method of doing his work when a safe method was at hand, he should be the bearer of the consequences of his act. (*St. Louis Bolt & Iron Co.* v. *Brennan,* 20 Ill. App. 555; *Cunningham* v. *Chicago M. & St. P. Ry. Co.,* 17 Fed. 882, 5 McCrary, 465; *Holland* v. *Chicago, M. & S. Ry. Co.,* 18 Fed. 243, 5 McCrary, 549; *B. & O. Ry. Co.* v. *Jones,* 95 U. S. 439, 24 L. Ed. 506; *Kresanwoski* v. *Northern*

*Pac. Ry. Co.,* 18 Fed. 229, 5 McCrary, 528; *Behrens* v. *Kansas Pacific Ry. Co.,* 5 Colo. 400; *Abend* v. *Terre Haute, I. R. Co.,* 111 Ill. 202, 53 Am. Rep. 616; *Simmons* v. *Chicago & R. R. Co.,* 110 Ill. 340.)

The doctrine of last clear chance cannot obtain where the negligence is continuing and of such a character, that it must be the proximate cause of the injury as in this case. (*Holmes* v. *Southern Pac. etc. Ry. Co.,* 97 Cal. 161, 31 Pac. 834; *Tobin* v. *Omnibus Co.* (Cal.), 34 Pac. 124; *International etc. R. Co.* v. *Garcia,* 75 Tex. 583, 13 S. W. 223; *Louisville etc. Ry.* v. *Webb,* 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; *Smith* v. *Norfolk & S. R. Co.,* 114 N. C. 728, 19 S. E. 863, 25 L. R. A. 287; *Schofield* v. *Chicago Ry. Co.,* 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; *Dyerson* v. *Union Pac. Ry. Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 132; *Brown* v. *Northern Ohio Co.,* 76 Ohio St. 234, 118 Am. St. Rep. 844, 81 N. E. 326, 10 L. R. A., n. s., 421.)

Unless it is clearly shown that the injury complained of was the direct proximate result of the unlawful speed of the train, without any contributory negligence on the part of the plaintiff, it is foreign to the case and gives him no right of recovery. (*Reidel* v. *Railway Co.,* 87 Md. 153, 67 Am. St. Rep. 328, 39 Atl. 507; *Baltimore & O. R. Co.* v. *State,* 69 Md. 551, 16 Atl. 212; *Neal* v. *Carolina Cent. Ry. Co.,* 126 N. C. 634, 36 S. E. 117, 49 L. R. A. 684; 21 Am. & Eng. Ency. of Law, 478; *State* v. *Baltimore etc. Ry. Co.,* 73 Md. 374, 21 Atl. 62, 11 L. R. A. 442.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This appeal presents for review a judgment upon a verdict directed for the defendants at the close of the evidence submitted by the plaintiff. The action was brought by the plaintiff Marie Neary in her own right as the widow and heir at law of James S. Neary, deceased, and as the guardian of her minor children, to recover damages for the death of the husband and

father, which, it is charged, was caused by the negligence of the defendant railway company and its engineer.

The defendant company owns extensive yards at Billings, Mont. At this point the line of its railroad extends east and west, with a slightly downward grade toward the east. There are, including the main line, nine parallel tracks. To the left, going east on the main line, is track No. 1, about 14 inches lower than the main line. Measured from rail to rail, the distance between the main line and this track is variously stated by witnesses at from five to eight feet. To the north of this are two other tracks, designated as the "scale lead" and the "house" tracks. Immediately to the right is a repair track, at a distance of ten feet from the main track, so called because used to hold cars undergoing repairs. At the time of the accident, there were cars on this track. The other tracks are farther toward the south. The defendant company and the Chicago, Burlington and Quincy Railway Company make joint use of these yards and tracks, the trains of the latter leaving its line, which ends at Huntley, twelve miles to the east, and running upon the main line of the defendant company, thence into the yards. Under this arrangement, Billings becomes the western terminus of the Chicago, Burlington and Quincy Line. Its west-bound trains are either broken up at this point or are transferred to the defendant company, and its east-bound trains, except the passenger trains, which are transferred to it at this point by the defendant company, are made up there. The employees of both companies frequently go upon all of these tracks in the performance of their duties. The deceased was in the employ of the Chicago, Burlington and Quincy Company as a freight conductor, and had brought his train into Billings at least fifty times during the previous eight months. The yards extend through the central portion of the city, and for most of the distance—several thousand feet—lie within the city limits. On the morning of April 29, 1905, the train of the deceased, having been made up for an outgoing run to Sheridan, Wyoming, was standing on track No. 1, headed toward the east, awaiting

the coming in of passenger train No. 6 from the west on the line of the defendant company. The engine was attached and steam was up. It was to follow train No. 6 to Huntley, where the latter also left the main line of the defendant company and became No. 42 on the Chicago, Burlington and Quincy Road. Train No. 6 was due at 9:10 o'clock. While it was a few minutes late, its arrival was momentarily expected; in fact, it arrived nearly on time. The passenger depot is near the east end of the yards. The engine of the outgoing freight train stood at a point about eight hundred feet west from this depot. The train was about thirteen hundred feet in length, thus putting the caboose attached to its rear end, about two thousand one hundred feet from the depot. There is a street crossing about three hundred feet west of the depot. Witness Gintz, who was a brakeman on the train of the deceased, testified that about 9:10 o'clock he came to the caboose to change his shoes and to get the train ready to leave; that, as he went in, he met the deceased going out to check the train—that is, to take the numbers, lettering, etc., on the cars constituting it, and write them into his designation book—that this was one of his duties; that he did not again see him alive; that it was customary for one checking trains to walk along on the right-hand side toward the engine parallel to the train, about six feet distant, in order to obtain an easy view of the numbers and lettering; that when in the yards, as in this instance, the conductor in checking his train walks between the rails of the track immediately to the right, because the numbers are on the right, if the track is clear; that this was the customary way of checking trains in the Billings yards, that a distance of six feet from the train as it stood that morning would put the deceased between the rails of the main track; that the main track to the west for three and one-half miles is straight and the view unobstructed; that a few minutes after entering the caboose he heard the noise of train No. 6, about half a mile away, and saw it through the rear door; that it passed the caboose, being then within the city limits, at the rate of twenty-five to thirty miles per hour; and that, as it did so, the

whistle was blown, giving a rolling sound. From statements of a witness who was at the passenger depot waiting for the incoming train, and another who was standing in the yards between the main line and track No. 1, about two hundred yards away, and witnessed the accident from that point, it appeared that the deceased was at that time engaged in checking his train, walking eastward between the rails of the main line. The latter of these states that he heard a whistle, and, upon turning to look, saw the train within "a rail and a half" of the deceased, and that immediately afterward it struck him, throwing him in the air half as high as a boxcar and to the right. The deceased seemed to be writing, standing with his back toward the incoming train. When the train was stopped, immediately after the collision, the body of the deceased was found lying opposite one of the Pullman cars attached to train No. 6, close to the repair track, and about six hundred feet from the caboose. It was picked up, and taken on the train to the depot. The other witness stated that he was standing at the passenger depot observing the train as it came in; that he did not hear the whistle; that he saw no emission of steam; and that he did not hear the bell ring. This train consisted of nine cars, and was about six hundred feet in length. By the application of the air-brake, such a train could be stopped within two hundred and fifty or three hundred feet when going at the rate of twenty or thirty miles per hour. If going at the rate of six miles per hour, it could be stopped within a distance of six feet. Application of the air-brake in emergencies—that is, with full braking power— would cause passengers in the Pullman to experience a jar. None was felt by the stopping of the train at this time. Several switch engines were at work in the yards, making more or less noise. Train No. 6 was due to leave at 9:30. The employees of the Chicago, Burlington and Quincy Company had time-cards showing the hour of its departure from Billings, but none of the hour of arrival. The atmosphere was clear, and the sight and hearing of the deceased were good. There was an ordinance of the city of Billings in force at the time declar-

ing it unlawful to move trains within the city limits at a rate of speed exceeding six miles per hour. A rule of the defendant company, introduced in evidence, is as follows: "(a) All trains must approach terminals, the ends of double tracks, junctions, railroad crossings at grade, and drawbridges prepared to stop, and must not proceed until switches or signals are seen to be right, or the track seen to be clear. Where required by law, all trains must stop. (e) All trains must approach and pass through yards under full control." The words "under full control," as used in this rule, are understood by railroad men to mean "ready to stop at any moment; there is danger ahead."

The complaint alleges that the deceased was upon the track in the performance of his duties; that his presence there was well known to the defendant Frost, who was driving the engine of the passenger train; that he, through gross and wanton negligence, failed to give any signal of the train's approach; that through his gross and wanton negligence he was running at an unlawful and dangerous rate of speed; that because of these gross and wanton acts of negligence he failed to stop the train, and thus prevent the accident; and hence that the death of the deceased was due to the gross and wanton negligence of the defendants. The defendants allege that the death of the deceased was due to his own negligence. The trial of the issues resulted as above stated. The principal questions presented for decision are two: (1) Was the deceased, as a matter of law, guilty of contributory negligence? (2) Is contributory negligence a bar to recovery in this case?

1. The first of these questions must, we think, be answered in the affirmative. But one legitimate inference can be drawn from the facts stated. The deceased was a man of experience—so much so that he had been put in charge of a train. He had been in and out of these yards many times during the preceding eight months, and must be presumed to have been acquainted, not only with the hazardous character of his employment generally, but also with the special dangers to be encountered there; for he had performed the same duties there at least fifty times

during these months. Several switch engines were at work and the noise from them tended necessarily, as he knew, to obscure more or less the signals and noise of the east-bound train, which he momentarily expected to arrive. So far as the proof shows, he could have checked his train as well after the arrival of train 6. With this experience and knowledge, he left the caboose of his train at a time when there was no pressing necessity or emergency calling him, got upon the track upon which the train was expected, the most perilous position he could have assumed, and proceeded in the opposite direction to check his train, allowing himself to become so absorbed in his task as to be apparently entirely oblivious of his surroundings. The track was clear behind him for a long distance. He did not turn to look, nor did he notice the sound of the whistle as the train approached, a fact which emphasizes his inattention. He had ample time to step off the track no matter what the rate of speed was at which the train approached, or whether it was running in violation of the rule or the ordinance or not. The slightest attention would have prevented the collision. Assuming that he would ordinarily have had a right to proceed between the rails as he did, instead of upon the vacant space between the tracks, this did not excuse him from the exercise of at least ordinary care and diligence to preserve his own safety. A railway track, known to be constantly in use, is itself a warning of danger. It is the duty of one attempting to cross it to look and listen. Failure to use this precaution is such contributory negligence as to preclude recovery for an injury inflicted by a passing train. (*Hunter* v. *Montana Central Ry. Co.*, 22 Mont. 525, 57 Pac. 140; *Railroad Co.* v. *Houston*, 95 U. S. 697, 24 L. Ed. 542; *Elliott* v. *Chicago, M. & St. P. Ry. Co.*, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068.) With greater reason does the principle apply to one who goes upon the track and travels laterally along it (*Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 26, 35 Pac. 332), especially so if he knows that a train is momentarily expected.

While the rule stated by these cases may not be applied strictly to the employees of a railway company who, in the discharge of their duties, are expected or required to be upon or near the track, yet to say that it has no application would be equivalent to an unqualified statement of a rule that would in all cases absolve the employees from using ordinary care for their own safety.   They have a right to rely to some extent upon the persons in charge of moving trains to give the proper signals and to take proper precautions to prevent accidents, but they have no right to rely wholly upon them, but must use due care to avoid danger.   And that this rule is applied with more or less strictness, in view of the circumstances of the particular case, is shown by the decisions of the courts generally.   (*Keefe* v. *Chicago & N. W. Ry. Co.*, 92 Iowa, 182, 54 Am. St. Rep. 542; 60 N. W. 503; *Cahill* v. *Chicago & A. Ry. Co.*, 205 Mo. 393, 103 S. W. 532; *St. Jean* v. *Boston & M. R. Co.*, 170 Mass. 213, 48 N. E. 1088; *Wilber* v. *Wisconsin Central Ry. Co.*, 86 Wis. 535, 57 N. W. 356; *Collins* v. *Burlington, C. R. & N. Ry. Co.*, 83 Iowa, 346, 49 N. W. 848; *Carlson* v. *Cincinnati, S. & M. R. Co.*, 120 Mich. 481, 79 N. W. 688; *Chicago, B. & Q. Ry. Co.* v. *Yost*, 56 Neb. 439, 76 N. W. 901; *Brady* v. *New York, N. H. & H. R. R. Co.*, 20 R. I. 338, 39 Atl. 186; *Harrison* v. *Texas Pac. Ry. Co.* (Tex. Civ. App.), 31 S. W. 242; *Aerkfetz* v. *Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; *Elliott* v. *Chicago Ry. Co.*, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; *Dyerson* v. *Union Pac. R. Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 132; *Buckmaster* v. *Chicago, & N. N. W. R. Ry. Co.*, 108 Wis. 353, 84 N. W. 845; *Sours* v. *Great Northern Ry. Co.*, 84 Minn. 230, 87 N. W. 766; *Sharp* v. *Missouri Ry. Co.*, 161 Mo. 214, 61 S. W. 829.)   The rule is a just one, and is necessary to the successful operation of railways.   Otherwise the employee would be excused entirely from the use of his faculties, and the necessity cast upon the employer to provide for his safety would make him practically an insurer.

2. But it is not an invariable rule that, where one through his own negligence puts himself in a place of danger, he is for-

this reason alone, as a matter of law, denied recovery for injuries inflicted by another. The general rule that one's own negligence in such case precludes recovery is subject to the qualification that, where the defendant has discovered, or should have discovered, the peril of the plaintiff's or deceased's position, and it is apparent that he cannot escape therefrom or for any reason does not make an effort to do so, the duty becomes imperative for the defendant to use all reasonable care to avoid the injury; and, if this is not done, he becomes liable, notwithstanding the negligence of the injured party. And this is true, not only as to technical trespassers upon a railway track in the way of passing trains, but also as to employees who may become so absorbed in the performance of their duties that they do not observe signals. In no case may the railway company, after the peril becomes apparent to those in charge of a train, and especially so after it is obvious that the danger is not appreciated by the person in the perilous situation, omit any reasonable effort to stop the train and prevent injury. On this subject it is said by Mr. Thompson in his work on Negligence: "It must be kept in mind that this obligation of care and effort does not necessarily commence at the time when the men who are driving the train see the trespasser on the track, for he may be a mile away, and in no immediate danger. It arises at the moment when he is seen to be in a perilous situation. Then, but not until then, the effort to stop the train must commence. In fact, the language of most of the decisions which speak upon this question speak of the obligation of care and effort in favor of the trespasser as arising at the point of time when his perilous situation is discovered or is known. They must have become aware both of his presence and his peril. When this condition arises, their obligation of care and effort to avert injuring him is exactly the same as though he were lawfully upon the track. Where those who are driving the train fail in the discharge of this duty after discovering the perilous situation of the trespasser, his contributory negligence in getting himself into the dangerous situation is eliminated from the case. *  *  *  This

duty is stronger and clearer in regard to employees working upon the track, because they are rightfully there, and their presence is always to be anticipated by the engineer, and he is consequently bound, in the exercise of reasonable care, to give them signals of the approach of his train. Their position, on the other hand, is that of men absorbed in their work, entitled to presume that the signals will be given. Moreover, if, by reason of being absorbed in their work, they fail to heed the signals, the law will extend some indulgence to their negligence, and will not exonerate the company if the engineer, seeing that they did not heed the signals and attempt to leave the track, fails to make any effort to stop his train if there is time to do so, so as to avoid injuring them." (2 Thompson on Negligence, sec. 1735.) And, as pointed out by this author, it is frequently a question of fact as to whether the railway company has observed all the required precautions.

There are many cases in the books where it has been held upon conditions very similar to those shown in this case, that the negligence of the employee as a matter of law precludes a recovery; but we are of the opinion that the facts stated here made a case for the jury. The train was running at an extraordinary and illegal rate of speed, and does not appear to have been under full control as required by the rule. Even so, it could have been stopped within three hundred feet. The deceased was apparently busy checking his train, and so completely absorbed in his task that he was unconscious of his peril. The engineer evidently saw him, for the evidence tends to show that he sounded the whistle. If this was done while the train was near the caboose, he had more than twice the distance necessary to stop the train. If it was not done until he was within a rail and a half of the deceased, and while going at the rate of thirty miles an hour, this precaution would seem to have been entirely ineffectual and useless, for the deceased was still so absorbed in his work that he did not notice it, and, if he had done so, had then less than three seconds to get out of the way; whereas, if the engineer had been obeying the ordinance and

had his train under full control, it could have been brought to a standstill within six feet. *Prima facie,* the facts give room for an inference of reckless and wanton negligence, justifying a recovery in the absence of countervailing evidence.

Such is the variety of incident entering into each case that it is difficult to find any two alike, and each must be determined by its own facts and circumstances. The following, however, are more or less in point, to the effect that a trial court may not, under such circumstances, conclude as a matter of law that the defendant had discharged itself from liability by observing all the precautions which the emergency required: *Riley* v. *Northern Pac. Ry. Co.,* 36 Mont. 545, 93 Pac. 948; *Louisville & N. R. Co.* v. *Morlay,* 86 Fed. 240, 30 C. C. A. 6; *Bouwmeester* v. *Grand R. & I. R. Co.,* 63 Mich. 557, 30 N. W. 337; *Kelley* v. *Chicago B. & Q. R. Co.,* 118 Iowa, 387, 92 N. W. 45; *Louisville & N. R. Co.* v. *Trammell,* 93 Ala. 350, 9 South. 870; *Watts* v. *Richmond & D. R. Co.,* 89 Ga. 277, 15 S. E. 365; *Kansas & Ark. V. Ry. Co.* v. *Fitzhugh,* 61 Ark. 341, 54 Am. St. Rep. 211, 33 S. W. 960; *St. Louis S. W. Ry. Co.* v. *Bishop,* 14 Tex. Civ. App. 504, 37 S. W. 764; *Erickson* v. *St. Paul & D. R. Co.,* 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786. In this last case the court, in considering the question here presented, said: "The court, at the request of plaintiff, charged the jury: 'If the engineer or person in charge of the train which struck plaintiff, in approaching him there at work, saw him there at work in a dangerous position close to the track, and that he made no attempt to avoid the approaching train, it was his duty, not only to warn plaintiff by the usual signal, but also, if there was time enough, to stop the train, then not stopping the train was negligence, and under those circumstances it is no defense to say that plaintiff was guilty of contributory negligence.' Of course, the mere fact that the engineer failed to stop the train after he saw the plaintiff, even if there was time to do so, would not render the defendant liable, provided the proper signals of warning had been given. The employees of the company would have a right to presume that the men had the faculties to appre-

ciate the danger of their situation, and, upon hearing the signal, would use them accordingly. But no degree of negligence on the part of a man would justify an engineer in running over him. Hence, if, after giving the proper signal, the engineer sees that a person in a position of imminent danger does not hear or comprehend the signals, and hence is making no effort to escape, it is his duty to stop his train if there is still time to do so before running over him. Not to do so would be a willful and wanton act, against which no amount of negligence on part of the person injured would be a defense.''

We do not desire to be understood as saying that, upon the evidence submitted in this case, it was the duty of the engineer to stop the train. We do wish to be understood, however, as holding that the defendants were guilty of gross negligence in running the train as they did, in violation of the ordinance; and that, taking into consideration this fact, together with the other facts admitted to be established by the evidence, it was not the province of the court to determine as a matter of law whether the defendants by the exercise of reasonable care could have stopped it and saved the deceased's life. This phase of the case should have been submitted to the jury under proper instructions.

3. Three questions have been submitted touching the action of the court in excluding evidence:

(a) Plaintiff sought to show that the deceased, in proceeding along the track to check his train, adopted the course customarily pursued in railroad yards generally. The court admitted the evidence as to the custom in the Billings yard, but excluded that tending to show that it was the same as in yards elsewhere. Under the view we have taken of this case, there was no error in the ruling. We have concluded that the deceased was guilty of negligence in becoming so entirely absorbed in his duties as to fail to observe his surroundings. The evidence as to custom had no tendency to rebut the presumption of negligence arising from this fact. If there were any ground in the evidence for an inference that the deceased would not have been

killed but for his inattention, and it were a question merely as to the course pursued by him, the evidence would have been competent to overcome and rebut any possible inference of negligence which might have been drawn from the fact that he was killed because he chose to walk along the track. Where the act resulting in the injury is not negligence *per se,* it is competent to show that other persons experienced in the same business, under similar circumstances, pursued the same course. (*Prosser* v. *Montana Central R. R. Co.,* 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814; Labatt on Master and Servant, sec. 353.) Such evidence cannot avail, however, where the injury has no connection with the course of action adopted.

(b) In this connection, an employee of the Northern Pacific Railway Company was asked what he knew of any effort at any time by the authorities of the company to prevent the checking of trains in the manner pursued by the deceased. He was not permitted to answer. This was an effort to show that the company acquiesced in, or tacitly approved, the custom pursued, and was therefore estopped to claim that the deceased was negligent in observing it. If observance of the custom did not itself involve negligence on the part of the deceased, it was not material whether the company acquiesced in it or not. If it did, the deceased could not justify or excuse his conduct because of the passive acquiescence of the defendant; for, though the defendant company was negligent, this negligence could not excuse negligence on the part of the deceased. The evidence was properly excluded.

(c) Evidence was also excluded which tended to show that at times the space of ten feet between the main and repair tracks was obstructed so that it could not be used as a passageway, to furnish ground for an inference that it was so obstructed on the day of the accident and could not have been used by the deceased. This was properly excluded. It had no tendency to establish the fact that the space in question was so obstructed on the day of the accident that it could not have been used. The fact that a space is sometimes obstructed is no proof of the

fact that it is always obstructed, or that it is obstructed at any particular time.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.